**ORIGINAL**

*cv DKW*

Of Counsel:
DAVIS LEVIN LIVINGSTON

MARK S. DAVIS                1442-0
mdavis@davislevin.com
MICHAEL K. LIVINGSTON       4161-0
mlivingston@davislevin.com
ERIN C. DAVIS                9292-0
edavis@deavislevin.com
LORETTA A. SHEEHAN          4160-0
lsheehan@davislevin.com
CLARE E. CONNORS            7936-0
cconnors@davislevin.com
MATTHEW C. WINTER           8464-0
mwinter@davislevin.com
851 Fort Street, Suite 400
Honolulu, Hawai'i 96813
Tel: (808) 524-7500/ Fax: (808) 356-0418

COLSON HICKS EIDSON
JOSEPH M. MATTHEWS (*pro hac vice pending*)
Fla. Bar No. 238996
joseph@colson.com
LATOYA C. BROWN (*pro hac vice pending*)
Fla. Bar No. 105768
latoya@colson.com
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel: 305-476-7400

RUBINSON LAW
SETH I. RUBINSON (*pro hac vice pending*)
Bar Card No. 24053908
srubinson@rubinsonlaw.com
1135 Heights Boulevard
Houston, Texas 77008
Tel: 713-802-9117

*Attorneys for Plaintiffs*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 02 2015

at ____ o'clock and ____ min. ___ M.
SUE BEITIA, CLERK

CV15  00394 DKW

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| MICHAEL KEVIN FLYNN; MARLA KAY FLYNN; and PATRICK R. FLYNN and MARY KAY FLYNN, Trustees of the Flynn Family Trust,<br><br>          Plaintiffs,<br><br>     vs.<br><br>MARRIOTT OWNERSHIP RESORTS, INC., a Delaware corporation; MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation d/b/a MARRIOTT VACATION CLUB; MARRIOTT RESORTS, TRAVEL COMPANY, INC., a Delaware corporation d/b/a MVC EXCHANGE COMPANY; MARRIOTT RESORTS HOSPITALITY CORPORATION, a South Carolina corporation; FIRST AMERICAN TRUST, FSB, a federal savings bank, solely as Trustee of Land Trust No. 1082-0300-00 (also known as MVC TRUST); MVC TRUST, a Florida land trust; KAUAI LAGOONS LLC, a Hawaii limited liability company; MARRIOTT KAUAI OWNERSHIP RESORTS, INC., a Delaware corporation d/b/a MARRIOTT VACATION CLUB INTERNATIONAL,<br><br>          Defendants. | CIVIL NO. CV 15  00394 DKW, BMK<br>(Other Civil Action)<br><br>**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; EXHIBITS A-I; AND SUMMONS**<br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiffs MICHAEL KEVIN FLYNN and MARLA KAY FLYNN, and PATRICK R. FLYNN and MARY KAY FLYNN, Trustees of the Flynn Family Trust (collectively "Plaintiffs") submit the following claims on their own behalf and also as representatives of classes of potential plaintiffs as set forth herein, against MARRIOTT OWNERSHIP RESORTS, INC., a Delaware corporation ("MORI"); MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation d/b/a MARRIOTT VACATION CLUB ("MVC"); MARRIOTT RESORTS, TRAVEL COMPANY, INC., a Delaware corporation d/b/a MVC EXCHANGE COMPANY ("MVC Exchange Co."); MARRIOTT RESORTS HOSPITALITY CORPORATION, a South Carolina corporation ("Marriott Hospitality"); FIRST AMERICAN TRUST, FSB, Trustee of MVC TRUST; MVC TRUST, a Florida Land Trust; KAUAI LAGOONS LLC, a Hawaii limited liability company ("Kauai Lagoons"); and MARRIOTT KAUAI OWNERSHIP RESORTS, INC., a Delaware corporation d/b/a Marriott Vacation Club International ("MKORI"), collectively "the Defendants."[1]

---

[1] The term "Defendants" will be used collectively. However, First American Trust, FSB is sued solely in its capacity as Trustee of the MVC Trust.

Defendants MORI and Marriott Hospitality do business under at least 12 other names. MORI, Marriott Hospitality, MVC Exchange Co., and MKORI all do business under the name "Marriott Vacation Club International." As reported in MVC's Form 10-K filed with the U.S. Securities and Exchange Commission on February 26, 2015, the Marriott Defendants operate under other shared business names, thereby blurring the line between each corporate entity.

# I.

## __INTRODUCTION__

1.     Plaintiffs are owners of timeshare interests in properties owned, operated, and managed by Marriott. All Plaintiffs own weekly timeshare interests in Marriott's Maui Ocean Club ("Maui Club")[2] and Marriott's Ko Olina Beach Club ("Ko Olina Club").  Additionally, Patrick R. Flynn and Mary Kay Flynn, Trustees of the Flynn Family Trust, own Marriott points-based timeshare interests through ownership of beneficial interests in the MVC Trust.

2.     During the financial crisis, Marriott owned tens of thousands of unsold timeshare interests in its various timeshare resorts which were virtually unsaleable.  While Marriott continued to own these timeshare interests, it was obligated to pay a share of the maintenance costs of each of the timeshare resorts equal to the percentage of timeshare interests it owned (or to provide a guaranty to the association responsible for such maintenance).  In order to sell the unsold inventory of undesirable weeks and to gain relief from its maintenance obligations as well as to delay the cost of developing new properties and facilitate the spin-off of its timeshare operations, in 2010 Marriot created a new points-based timeshare

---

[2] "Maui Club" is meant to include all segments, including Maui Ocean Club, Marriott's Maui Sequel Lahaina Tower, Napili Villas, and Marriott's Maui Sequel Napili.

model that was radically different from its traditional timeshare model where purchasers ("Weeks Owners") bought specific use weeks.

3. To embark on this change, Marriott transferred its unsold inventory of weeks to a Florida Land Trust (the "MVC Trust") and began selling beneficial interests in the MVC Trust. Purchasers who buy beneficial interests in the MVC Trust are allotted a certain number of points they may use to reserve the right to stay at Marriott Timeshare Resorts. Since it created the points-based timeshare model, Marriott has promoted and marketed its points-based product predominantly through its sales representatives at sales centers located in Marriott Timeshare Resorts. Marriott first attempts to convince Weeks Owners to convert entirely to points. If that fails, Marriott then attempts to sell Weeks Owners points to supplement their weekly timeshare interests.

4. To the best of Plaintiffs' knowledge, none of Marriott's competitors and leaders in the timeshare industry have taken the route Marriott has taken – that is, operate weekly and points timeshare programs simultaneously and in a manner that sacrifices the use right of one set of owners for the betterment of another set. It is inequitable and unlawful.

5. Since the implementation of the new points-based timeshare model, Weeks Owners – and particularly owners of multiple weekly timeshare interests ("multiple Weeks Owners") and weekly timeshare interests in premier resorts such

3

as the Marriott Hawaii Resorts, such as the Plaintiffs – are unable to exercise their rights because of competition from an exponentially growing number of purchasers of beneficial interests in the MVC Trust ("Points Owners"), whom Marriott unfairly gives superior reservation and use rights.  On information and belief, the Class members' use rights have also been impaired because Marriott automatically reserves for itself the best timeshare units and use weeks associated with interests owned by the MVC Trust – before the Class members even have a chance to fairly compete for these units.  This is a direct violation of (1) the Class members' reservation and use rights, (2) the Class members' right to compete on an equitable "first-come, first-served" basis with other owners of weekly timeshare interests, and (3) Marriott's promise to not compete unfairly with its owners by awarding itself greater reservation rights with respect to its ownership interests.  As a result of these and other factors, Class members are left to compete for poor quality units and less desirable use periods.

6.     By impairing the practical ability of Plaintiffs and other Class members to use and enjoy their timeshare unit for the maximum number of nights to which they are entitled, Marriott has violated a core principle incorporated in every timeshare statute in every state in the United States, including Hawaii, which prohibits selling one use week to more than a single purchaser – the one-to-one

4

use-right to use-night requirement. Marriott also violates Hawaii consumer protection laws that protect consumers against such unfair and unlawful conduct.

7.     Marriott also misrepresents the nature of the points-based product as "timeshare estates," thus misleading Weeks Owners to believe that by purchasing a number of points to supplement their Weeks they are purchasing another legal interest in real estate. Once Weeks Owners purchase points in order to supplement their Weeks they become liable for a share of maintenance fees for Marriott's unsold timeshare interests in all resorts Marriott has included in the MVC Trust.

8.     In this action, Plaintiffs assert individual and representative claims for breaches of the Hawaii timeshare agreements and Hawaii consumer protection and timeshare statutes. Plaintiffs, individually and on behalf of the class of potential plaintiffs, seek an order from this Court requiring Marriott to institute an annual audit of its points and weekly timeshare inventories, to be conducted by independent, certified professionals. This will ensure Marriott fulfils the one-to-one use-right to use-night requirement as relates to both timeshare programs operating in tandem. Plaintiffs also request that multiple Weeks Owners be provided an effective mechanism to insure the priority reservation rights at their home resorts for use periods or units in which they have an interest, as intended by the timeshare agreements. Any such mechanism should include an eleven to thirteen months exclusive priority period and an exclusive telephone line for

5

Weeks Owners trying to make reservations in their Hawaii home resorts. Further, because Marriott induced the Class members to purchase points by misrepresenting the nature of the points as real estate, Patrick Flynn and Mary Kay Flynn, individually and on behalf of a sub-Class of potential plaintiffs, also seek rescission of the points purchase agreement.

9.    As set forth hereinafter, Plaintiffs meet the requirements and will fulfill the obligations as class representatives for the classes of injured plaintiffs.

## II.

## JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), as the proposed class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from at least one Defendant, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

11.   Plaintiffs are citizens and residents of Arizona and Illinois. Defendants MORI, MVC, MVC Exchange Co., and MKORI are incorporated in Delaware and maintain their principal place of business in Florida. Defendant Kauai Lagoons is a Hawaii limited liability company with its principal place of business in Florida. Defendant Marriott Hospitality is incorporated in South Carolina with its principal place of business in Florida. The MVC Trust is a

6

Florida land trust. Its trustee, First American Trust, FSB (sued only in this capacity), is a federal savings bank headquartered in California and has a national presence.

12. The claim for rescission of the points-based timeshare agreement alone satisfies the CAFA monetary threshold.

13. There are five Marriott Hawaii timeshare resorts, developed by the Marriott developer entities (MORI, Kauai Lagoons and MKORI) and operated by MVC.[3] Hawaii is one of the most popular vacation spots in MVC's vacation club portfolio.[4] There are at least 1557 vacation ownership or timeshare units at these Hawaii resorts or approximately 80,964 individual time share use weeks. Together, Maui Club and Ko Olina Club host 1019 of these units.[5] Each such unit produces 52 timeshare weeks per year. Thus, Maui Club and Ko Olina Club host approximately 52,988 timeshare use weeks. Marriott's average resort occupancy

---

[3] As discussed below, Marriott Hospitality conducts the day-to-day operations of, on information and belief, all the Marriott Hawaii timeshare properties.
[4] *See, e.g., More Destinations Let You Explore the World,* http://www.marriottvacationclub.com/vacation-resorts/ (last visited May 12, 2015).
[5] Marriott Vacations Worldwide Corp., Annual Report (Form 10-K) (February 26, 2015) ("Our Properties"), http://files.shareholder.com/downloads/AMDA-IZDDS/4123344756x0xS1193125-15-64836/1524358/filing.pdf (last visited May 12, 2015).

rate is 90%.[6]  At least 80% of Marriott's sales is generated at sales centers that are co-located with one of its resorts.[7]

14.   At a very conservative estimate, there are at least 5,185 potential sub-Class members (owners of timeshare interests in the Marriott Hawaii timeshare resorts whose primary residences are in states throughout the United States, who have also spent at least $10,000 each on Marriott's points product).  Based on the rough pro rata share of Marriott Hawaii Resorts to all resorts in the MVC Destination Program, this alone places $51,850,000 at issue.

15.   Further, it is estimated that there are well over 5000 timeshare week owners (potential Class members) who have spent a minimum of $15,000 on their weekly timeshare interests in the Marriott Hawaii timeshare properties.  This places $75,000,000 conservatively at issue.  The amount in controversy surpasses the CAFA requirement.  (*See also infra* Part IV and n.26 for additional facts supporting the existence of jurisdiction under CAFA.)

16.   Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and property that is the subject of this action lie in the district.  The Defendants engage in extensive business dealings and transactions within this district.  Defendant

---

[6] *See, e.g.*, Marriott Vacations Worldwide Corporation, Annual Report 2012-2015.
[7] *See id.*

8

Kauai Lagoons is incorporated in this district. The timeshare resorts where Plaintiffs purchased their timeshare interests are in this district.

17. Plaintiffs have complied with any necessary precedents and conditions.

### III.

### THE PARTIES

18. Plaintiffs Michael Kevin Flynn and Marla Kay Flynn ("Mr. and Mrs. Michael Flynn") are citizens of Illinois residing in Danville, Illinois. Mr. and Mrs. Michael Flynn bought timeshare interests from MORI, each consisting of an undivided fractional interest in certain condominiums at Maui Club and Ko Olina Club – Mr. and Mrs. Michael Flynn's Home Resorts. Copies of Mr. and Mrs. Michael Flynn's purchase documents are attached as Exhibit A.

19. More specifically, in 2004, Mr. and Mrs. Michael Flynn purchased from MORI a week ownership interest in an Ocean View Two Bedroom Makai Unit in the Ko Olina Club for $23,220. Then, in 2005, Mr. and Mrs. Michael Flynn purchased from MORI a week ownership interest in an Ocean View Two Bedroom Unit in the Ko Olina Club for $15,480. In 2013, Mr. and Mrs. Michael Flynn purchased from a third party an Odd Year week ownership interest in the Ko Olina Club for approximately $5000.

20.     Additionally, in 2006, Mr. and Mrs. Michael Flynn upgraded their week ownership interests in the Maui Club for a Two Bedroom Ocean View Unit in a newer phase of that same resort for a contract price of $53,500.  And, in 2007, Mr. and Mrs. Michael Flynn purchased from MORI a Three Bedroom Ocean Front Unit in the Maui Club for $68,700.

21.     Mr. and Mrs. Michael Flynn have owned their timeshare interests in the Maui Club and the Ko Olina Club from the dates of purchase to the present. Mr. and Mrs. Michael Flynn are not owners of beneficial interests in the MVC Trust (described hereafter) and are therefore not owners under the Marriott Vacation Club Destinations timeshare plan (the "Destinations Program" or "points-based timeshare plan").

22.     Plaintiffs Patrick Flynn and Mary Kay Flynn ("Mr. and Mrs. Patrick Flynn") are citizens of Arizona residing in Scottsdale, Arizona.  They bought timeshare interests from MORI, each consisting of an undivided fractional interest in certain condominiums at Maui Club, Ko Olina Club, and Marriott's California Newport Coast Villas.  Copies of their purchase documents are attached as Exhibit B.

23.     More specifically, in 2004, Mr. and Mrs. Patrick Flynn purchased from MORI a week ownership interest in an Ocean View Two Bedroom Unit in the Ko Olina Club for $38,500.  Then, in 2006, they purchased from MORI a week

10

ownership interest in an Ocean View Two Bedroom Unit in Maui Club for $53,500. In 2007, they purchased a Platinum season timeshare interest in Marriott's Newport Coast Villas for $33,250. Maui Club, Ko Olina Club, and Newport Coast Villas are Mr. and Mrs. Patrick Flynn's Home Resorts.

24.     In 2014, during a stay at Newport Coast Villas, Mr. and Mrs. Patrick Flynn purchased from MORI beneficial interests in the MVC Trust for a purchase price of approximately $18,180. Mr. and Mrs. Patrick Flynn pay annual maintenance and enrollment fees for these interests, which is approximately $927.50 for 2015.

25.     Defendant     MARRIOTT     VACATIONS     WORLDWIDE CORPORATION ("MVC") is a Delaware corporation with its principal place of business in Florida whose shares are listed on the New York Stock Exchange. It conducts timeshare operations and delivers various services related thereto under the brand name MARRIOTT VACATION CLUB.

26.     Until approximately November 21, 2011, when Marriott International, Inc. ("MII") completed the spin-off of its vacation ownership or timeshare division, MVC was operated as a subsidiary of MII. Following the spin-off, Marriott's timeshare operations were separated and transferred to MVC, a defendant in this action. The principal officers and directors of MVC were officers and executives of the timeshare operations owned by MII prior to the separation.

11

27.     As of January 2, 2015, MVC reported in its Form 10-K dated
February 26, 2015 that it "operated **58 properties** with **12,866 vacation
ownership villas ("units")** and approximately **415,000 owners**."   Among the 58
properties operated by MVC are the five Hawaii Timeshare Resorts.  The 415,000
owners include owners of weekly timeshare interests in the Marriott Hawaii
timeshare resorts and also owners of use interests (beneficial interests) in the MVC
Trust.  The resorts will be referred to as "Marriott Timeshare Resorts" or "Marriott
Hawaii Timeshare Resorts."

28.     Since the spin-off in 2011, MVC, through its subsidiaries, offers
programs, products and services under the brands owned by MII, including
Marriott Vacation Club, The Ritz-Carlton Destination Club and Grand Residences
by Marriott, none of which are owned, developed, or sold by MII, The Ritz-Carlton
Hotel Company, L.L.C. or their affiliates.   MVC and its subsidiaries use the
Marriott marks and The Ritz-Carlton marks under license from MII, The Ritz-
Carlton Hotel Company, L.L.C. and their affiliates.

29.     Defendant MARRIOTT OWNERSHIP RESORTS, INC. ("MORI") is
a Delaware corporation with its principal place of business in Florida.  It is the
entity through which MII entered the timeshare business in 1984 and has been the
principal developer of Marriott's timeshare resorts since.  MORI was a subsidiary
of MII until it was transferred and became a subsidiary of MVC during the

12

corporate spin-off in November 2011. MORI owns and manages the Destinations Program (the points-based timeshare plan). The program and products provided under the Marriott Vacation Club Destinations brand are owned, developed, and sold by MORI.

30.   MORI and MVC – as developer, owner and operator of the Marriott timeshare plans and properties – are responsible for the implementation and operation of the weekly and points-based timeshare plans in tandem in a manner that violates Hawaii timeshare law (particularly the one-to-one use-right to use-night requirement). Similarly, both these Defendants spearhead Marriott's deliberate efforts to devalue weekly timeshare interests and handicap Weeks Owners' – particularly multiple Weeks Owners'– ability to use and enjoy their use periods (with the hope that this will leave Weeks Owners no other choice but to convert their weeks to purchase points). As discussed in detail throughout this complaint, this and other conduct by MORI and MVC also violate Hawaii consumer protection laws.

31.   Defendant MARRIOTT RESORTS, TRAVEL COMPANY, INC. is a Delaware corporation with its principal place of business in Florida that does business under the name of MVC EXCHANGE COMPANY ("MVC Exchange Co."). It is a wholly-owned subsidiary of MORI and provides exchange and reservation services as the operator of the Marriott Vacation Club Destinations

Exchange Program (the "Exchange Program"). More specifically, MVC Exchange Co. facilitates the reservation of accommodations and exchanges. It manages the exchange program and other related benefits and services known as the Exchange Program and provides the MVC Trust Owners Association with a total assessment on an annual basis subject to increases based on accommodations available during the year. MVC Exchange Co. also provides inventory management services.

32.    As co-operator of Marriott's reservation services and by providing inventory management services, MVC Exchange Co. is responsible for violations of the one-to-one use-right to use-night requirement alleged herein and for giving Marriott an unfair reservation advantage with respect to the use interests owned by the MVC Trust, in violation of Hawaii timeshare and consumer protection laws.

33.    Defendant    MARRIOTT    RESORTS    HOSPITALITY CORPORATION ("Marriott Hospitality") is a South Carolina corporation with its principal place of business in Florida that is wholly-owned by MORI. Marriott Hospitality contracted to be the managing agent or program operator for a number of Marriott's Timeshare Resorts, including, on information and belief, all the Marriott Hawaii Timeshare Resorts. Marriott Hospitality also contracted to be the Trust Manager for the MVC Trust, thereby accepting the responsibility for the day-to-day management and operation of the MVC Trust owned property. In addition,

14

Marriott Hospitality is a broker in transactions involving the resale of Marriott timeshare interests.

34.    As program operator responsible for the day-to-day management and operations of Marriott's timeshare resorts, Marriott Hospitality's duties include such things as: administration, management and operation of the reservation system for the timeshare program; preparing a budget for the timeshare program and assessing and collecting program expenses and charges from timeshare owners; and overseeing the management and maintenance of the timeshare units. Like, MVC Exchange Co., Marriott Hospitality's liability arises because of its operation of the reservation system in violation of the one-to-one use-right to use-night requirement and the Plaintiffs' use rights. Both of these Marriott companies are at the center of the Plaintiffs' allegations of Marriott's misconduct with respect to the reservation system and Class members' use rights. Marriott Hospitality is very involved in drafting the reservation procedures and, on information and belief, granting Marriott inequitable reservation rights.

35.    Defendant MVC TRUST is a Florida Land Trust created by Marriott in 2010. Unsold timeshare interests in the Marriott Timeshare Resorts previously owned by Marriott, including unsold timeshare interests in Marriott Hawaii Timeshare Resorts as described more specifically hereafter, have been transferred and are now owned by the MVC Trust and are available for usage through the

Destinations Program.   The MVC Trust is unjustly enriched by the exorbitant maintenance fees charged to the Class members, who were induced by Marriott to purchase the points-based timeshare interests through misrepresentation and other unlawful conduct.

36.   Defendant KAUAI LAGOONS LLC ("Kauai Lagoons") is a Hawaii limited liability company with its principal place of business in Florida.   It is a subsidiary of MVC and a named developer of Marriott's Kauai Lagoons– Kalanipu'u timeshare resort.

37.   Defendant MARRIOTT KAUAI OWNERSHIP RESORTS, INC. ("MKORI") is a Delaware corporation with its principal place of business in Florida.   It is a subsidiary of MVC and has acted in the capacity of sales agent for MORI.   MKORI is a named developer for Marriott's Kauai Beach Club.

38.   Like MORI, Kauai Lagoons and MKORI (as developers and operators of the Marriott Hawaii properties) are responsible for the implementation and operation of the weekly and points-based timeshare plans in tandem in a manner that violates Hawaii timeshare law – particularly the one-to-one use-right to use-night requirement.   Kauai Lagoons and MKORI also violate Hawaii consumer protection laws.

39.   Collectively, the above-referenced Defendants will sometimes be referred to generically as "Marriott."

16

40.   Defendant FIRST AMERICAN TRUST, FSB, is a federal savings bank chartered with the Office of the Comptroller of the currency, headquartered in California and doing business in at least nine states.  It is sued solely in its capacity of Trustee of Land Trust No. 1082-0300-00 (also known as MVC TRUST).


# IV.

## SUBSTANTIVE ALLEGATIONS

### Governing Documents For The Hawaii Timeshare Agreements

41.   Marriott filed governing documents for the Marriott Hawaii Timeshare Resorts in the public records of the State of Hawaii.  The Declaration of Condominium Property Regime and Vacation Ownership Program Declaration of Covenants, Conditions and Restrictions relating to the Maui Ocean Club (the "Maui Club Timeshare Agreement") was filed in 1999.  Marriott filed the Ko Olina Beach Club Vacation Ownership Program Declaration of Covenants, Conditions and Restrictions (the "Ko Olina Timeshare Agreement") in 2001.  It filed the Waiohai Beach Club Vacation Ownership Program Declaration of Covenants, Conditions and Restrictions (the "Waiohai Timeshare Agreement") in 2001 and the Kauai Beach Club Vacation Ownership Program Declaration of Covenants, Conditions and Restrictions (the "Kauai Timeshare Agreement") in

1995.[8] The Kalanipu'u Ownership Program Declaration of Covenants, Conditions and Restrictions (the "Kalanipu'u Timeshare Agreement") was filed in 2010. Collectively, these agreements are referred to as the "Hawaii Timeshare Agreements" and copies are attached as Exhibits C through G.

42. The Hawaii Timeshare Agreements are all valid agreements enforceable under the laws of Hawaii and directly binding on MORI, MKORI, and Kauai Lagoons. The Hawaii Timeshare Agreements are indirectly binding on the other Defendants, all of whom have accepted certain rights and perform certain obligations under these agreements. For instance, the Hawaii Timeshare Resorts are among the 58 properties owned and operated by MVC; pursuant to the Hawaii Timeshare Agreements, Marriott Hospitality contracted to be (and is compensated as) the manager of day-to-day operations for, on information and belief, all the Hawaii Timeshare Resorts; and, both Marriott Hospitality and MVC Exchange Co. operate the reservation systems and are responsible for facilitating Plaintiffs' exercise of their contractual reservation and use rights. *See supra* "Parties."

43. Under the Hawaii Timeshare Agreements, MORI, Kauai Lagoons, and MKORI reserved certain specifically enumerated rights.[9] The Hawaii Timeshare Agreements provide that no timeshare owner, including the developer

---

[8] "Joseph Scalo" signed the Kauai and Maui Club Timeshare Agreements as vice president for MKORI and MORI, respectively.
[9] *See* Exs. C-G.

18

entities, can transfer or mortgage ownership interests in a manner that "otherwise affect another Owner's Ownership Interest," and an Owner can transfer only the Owner's respective interests.[10]

44.     Under the Hawaii Timeshare Agreements an owner of weekly timeshare interests: owns a fractional share of the property; has the right to reserve and then use for a period of approximately one week during the owner's respective use year a unit (of the same "Unit Type" purchased) in the program; is a member of the timeshare association.[11]   The program operator or management company (e.g., Marriott Hospitality) provides the reservation services necessary for owners to utilize their use right.[12]   The program operator also manages the timeshare units and provides additional services material to owners' use and enjoyment of the property.[13]

45.     As owners of interests in the Hawaii Timeshare Resorts, absent any specifically reserved rights, MKORI, MORI and Kauai Lagoons are entitled to

---

[10] Ko Olina Club Timeshare Agreement ¶ 7.5A; Waiohai Club ¶ 7.5A; Maui Club ¶ 7.5A; Kalanipu'u Timeshare Agreement ¶ 8.5; Kauai Timeshare Agreement ¶ 7.5A.

[11] *See, e.g.,* Ko Olina Club Timeshare Agreement ¶ 1.1E; Waiohai Club ¶ 1.2E; Maui Club ¶ 1.2E; Kalanipu'u Timeshare Agreement § 4; Kauai Timeshare Agreement ¶ 1.2E.

[12] *See, e.g.,* Disclosure Statement on Marriott Ownership Resorts, Inc. in the Ko Olina Beach Club Vacation Ownership Program, Registration No. TD-153, Exhibit H, at 1 (discussing role of program operator).

[13] *Id.*

reserve and have confirmed use periods on the same basis as other owners – the developers have no greater reservation rights than Weeks Owners.[14]

46.     Plaintiffs' contract documents also include disclosure statements for the Hawaii timeshare programs.[15] The disclosure statements, which are required by law and filed by Marriott with the State of Hawaii's Department of Commerce and Consumer Affairs,[16] explain the programs. Marriott's disclosure statements emphasize Plaintiffs' and Class members' bargain to compete only with other Weeks Owners "on a first come, first served basis" for accommodations twelve months in advance (and thirteen months in the case multiple Weeks Owners).[17]

47.     Marriott's disclosure statement acknowledges the inherent conflict that exists as a result of the program operator (Marriott Hospitality) being an affiliate entity.  The disclosure statement emphasizes, however, that the developer possesses "no greater priority with respect to reservation than any other Owner,

---

[14] See, e.g., Waiohai Timeshare Agreement ¶ 6.12A; Ko Olina Club Timeshare Agreement ¶ 6.12A; Maui Club Timeshare Agreement ¶ 6.12A; Kalanipu'u Timeshare Agreement ¶ 7.10A; Kauai Timeshare Agreement ¶ 6.12A.

[15] See, e.g., Ex. H; Disclosure Statement on Marriott Ownership Resorts, Inc., Maui Ocean Club Vacation Ownership Program, No. TD-141, Exhibit I.

[16] Hawaii Department of Commerce and Consumer Affairs Administrative Rules §§ 16 -106-6, 16-106-3.   These documents may have been filed with the Department of Land and Natural Resources-Bureau of Conveyances as well.

[17] See, e.g., Ko Olina Disclosure Statement ¶ 3C(6)(a)(iii) ("Owners will have the ability to request a reservation for a seven (7) night stay for an accommodation for a check-in day on a first-come, first-served basis, with other Owners, beginning twelve (12) months in advance of the requested check-in day"); Maui Disclosure Statement (same).  ("Owner" is defined in the declarations.)

20

and the Program Operator will always seek to assign Use Periods on an equitable basis among all Owners, including the Developer."[18]

### The Traditional Week Ownership Model

48.     Under Hawaii law, there are two kinds of a timeshare plans: (1) in a "time share ownership plan" a purchaser receives an ownership interest and the right to use the timeshare property – this is the equivalent of ownership of real property; (2) the "time share use plan" is akin to a license, whereby a purchaser gets the right to use the timeshare property but does not get an ownership interest – that is, the purchaser does not receive an estate in or title to real property.

49.     The traditional week ownership timeshare model falls under the first category - time share ownership plan.  The traditional week ownership timeshare model is typically categorized by such inseparable factors as Unit Type (e.g., One or Two Bedroom, Ocean View, Ocean Front, etc.), Ownership Share (number of weeks), Season Purchased (e.g., Gold or Platinum Season), and Reservation and Use Rights (i.e., Every year, Every Odd year, or Every Even Year) at any given Marriott Timeshare Resort ("Home Resort").

50.     Fundamentally, a purchaser of Marriott's former week ownership timeshare (a Weeks Owner) purchased the right to reserve a specific week (a "Use

---

[18] Ko Olina Disclosure Statement ¶ 2; Maui Disclosure Statement (same).

21

Week") at a Marriott Timeshare Resort in the year that he or she is entitled to such usage (the "Use Year") coupled with an estate in the Hawaii real property on which the resort is located.

51.     To illustrate, using two of Mr. and Mrs. Michael Flynn's timeshare interests as examples, provided Mr. and Mrs. Michael Flynn follow certain reservation procedures, they have the right to reserve and use an Ocean View Two Bedroom Makai Unit in the Ko Olina Club for one week every odd year, and the right to reserve and use an Ocean View Two Bedroom Makai Unit in the Ko Olina Club for one week every even year.   Multiple Weeks Owners also received preferential reservation rights under the timeshare agreements.   By contract and state law Marriott may not impair the reservation rights granted to Plaintiffs and other Weeks Owners, particularly multiple Weeks Owners.

52.     When Weeks Owners reserve their Use Week with Marriott, they must adhere to a system of check-in and check-out days and times.   This typically requires a mandatory weekend check-in or check-out date.

53.     In addition to the deeded right to reserve a Use Week, to enhance appeal for its products, Marriott provided Weeks Owners with the additional right to trade or exchange their right to use weeks in any given year.   Hence, Marriott entered into an affiliation agreement with Interval International ("Interval"), an exchange company that manages inventory of exchange weeks.   This allowed

22

Weeks Owners to exchange their Use Week for reservations at another destination other than their Home Resorts and maintain a market value commensurate with the public's demand for the resort, unit type, and dates.  Owners of timeshare weeks in premier resorts, such as the Marriott Hawaii Timeshare Resorts, enjoyed superior exchange values due to their preferential reservation rights under the timeshare agreements.

54.    When Weeks Owners such as Plaintiffs invested in Marriott's timeshare program, they bargained to enjoy, and initially enjoyed, standing that permitted them to easily schedule vacations at their Home Resorts.

55.    Plaintiffs' use right is secured by the Hawaii Timeshare Agreements and state law prohibitions on Marriott violating the one-to-one use-right to use-night requirement.  This requirement, which is included in the Hawaii timeshare statute, prohibits overselling, or selling the right to use more weeks or nights than are available in a timeshare plan, and assures the right and practical ability of each owner to use a timeshare unit for the maximum number of nights to which the owner is entitled.

56.    Despite its failure to comply with this requirement (as Plaintiffs allege on information and belief herein) Marriott is aware of the one-to-one rule, which it reiterates in timeshare documents.   For example, the Kalanipu'u Timeshare Agreement provides:

**4.8   OWNER-TO-ACCOMMODATION   RATIO/INVENTORY CONTROL SYSTEM**. Except as otherwise provided in Paragraph 1 3 .4 with respect to conducting maintenance, repair and refurbishment to the Vacation Units and their common elements, *the Developer (during the period the Developer is selling Ownership Interests for initial sale) and the Management Company shall work together to ensure the Program at all times maintains a one-to-one Owner to accommodation ratio, which means maintaining the ratio of the number of Owners*
*eligible to use a Vacation Unit on a given night to the number of Vacation Units available for use within the Program on that night, such that the total number of accommodation nights represented by Owners eligible to use the Vacation Units for Use Periods of a specific number of nights during a given Use Year shall never exceed the total number of accommodation nights in the Vacation Units available for use that year...* The Developer shall monitor the sale of Ownership Interests and Vacation Units to assure the Program also complies with the one-to-one use-right to use-night requirement under Hawaii's Time Share Law (Section 514E-8.6) to the extent it applies to the Program.

57.    Through its introduction and continued operation of the points-based timeshare plan Marriott materially and adversely affected the legal rights of Weeks Owners, such as the Class members.

### The New Points-Based Timeshare Model

58.    When the worldwide recession hit in 2008, Marriott owned tens of thousands of unsold timeshare interests in the Marriott Timeshare Resorts. During the financial crisis these units were virtually unsaleable. While Marriott continued to own these timeshare interests, it was obligated to pay a share of the maintenance costs of each of the Marriott Timeshare Resorts (or to provide a guaranty to the

association responsible for such maintenance) based on the number of unsold timeshare interests.

59.     In order to make these largely undesirable timeshare interests more salable, to postpone the costs of building new resort properties, and to obtain relief from the obligation to pay its pro rata share of maintenance obligations Marriott introduced a new points-based timeshare model in 2010 – the Destinations Program.

60.     To embark on this change, Marriott created the MVC Trust, to which it transferred the unsold inventory of weeks from over 45 Marriott Timeshare Resorts.  Beneficial interests in the MVC Trust constitute timeshare interests in Marriott's new points-based timeshare plan.

61.     In contrast to the traditional week ownership model, purchasers under the points-based model do not buy specific weeks in specific projects.  Instead, Points Owners are allocated a certain number of "points" representing their usage rights.  With these points, Marriott represents that Points Owners will be able to access over 45 – now 60 – Marriott Timeshare Resorts (now known as "Marriott Vacation Club Resorts") and reserve units, days or weeks in these resorts.  Marriott facilitates exchange of points-based timeshare interests through the Exchange Program, which was implemented simultaneously with the Destinations Program and is run by Defendant MVC Exchange Co.

62.   The dollar value of the points is not correlated to any market value and is subject to change by Marriott.  Moreover, the weeks to points conversion ratio is not equitable.  To illustrate with a hypothetical: on Monday a purchaser buys $55,000 worth of points in order to get into an Ocean View Two Bedroom unit at Maui Club for a week.  That same day, Mr. and Mrs. Patrick Flynn decide to convert their weekly interest in an Ocean View Two Bedroom unit at Maui Club to points in order to trade into another resort for a week that requires $55,000 worth of points.  Marriott does not make it a fair trade.  Rather, Marriott will give Mr. and Mrs. Patrick Flynn $50,000 worth of points for their Maui Club Ocean View weekly interest and tell them they have to purchase additional points to make the trade.  The system operates entirely at Marriott's whim and inequitably.

63.   As of March 19, 2013, Marriott had transferred tens of thousands of weeks from more than 45 different Marriott Timeshare Resorts in numerous states into the MVC Trust.   And, pursuant to Marriott's own arbitrary internal calculations, Marriott had created 828,195 beneficial interests in the MVC Trust that could be sold to the general public – these total beneficial interests permitted Marriott to sell 207,048,750 "Points" to the general public.

64.   Upon information and belief, only a small number of the apartment units and timeshare interests that Marriott transferred to the MVC Trust are of the same categories of interests owned by Plaintiffs and other members of the Class.

65.    The points-based plan gave Marriott the flexibility to convert its sales efforts to a multi-site timeshare operation rather than selling the timeshare interests in each Marriott Timeshare Resort as separate timeshare ownership interests, each limited by the one-to-one use-right to use-night requirement.

66.    In contrast with Weeks Owners, Points Owners enjoy the advantages of being able to "**choose from any location and any size villa, check in on any day they wish and stay as long as they want.**"[19]  Points Owners are not restricted to weekend check-in or check-out days as are Weeks Owners.

67.    Points Owners with Premier or Premier Plus status enjoy even greater owner benefits and travel options.  For example, certain reservation windows do not apply to Premier or Premier Plus Points Owners.  These elite owners can book stays 13 months in advance, earlier than Weeks Owners who can reserve 12 months in advance unless they are reserving multiple weeks.[20]

---

[19]    *How         Vacation         Club         Points         Work*, http://www.marriottvacationclub.com/timeshare-ownership/how-vacation-club-points-work.shtml (last visited Mar. 27, 2015).

[20]  Marriott implemented new ownership statuses which became effective, on information      and      belief,      April      30,      2015.      *See* http://www.marriottvacationclub.com/common/vc/en-us/pdfs/OwnershipLevelsResources/benefits_at_a_glance.pdf (last visited May 15, 2015).  MVC states that Premier Owners with 6,500 to 6,999 Vacation Club Points as of April 29, 2015 will be elevated to the new "Executive" status and Premier Plus Owners with 13,000 to 14,999 Vacation Club Points as April 29, 2015 will be elevated the new "Chairman's Club" status.

68.     From commencement of the Points Program until April 2015, Marriott defined a "Premier Points Owner" as one owning 6500 points and a "Premier Plus Points Owner" as one owning 13,000 points.  At the same time, Marriott indicated that it would permit as many as 20% of the total of 207,048,750 points in the MVC Trust to be owned by Premier Points Owners and 5% of the total of 207,048,750 to be owned by Premier Plus Owners.  Thus, under Marriott's 2014 definitions there could have been as many as approximately 6,300 Premier Points Owners and as many as approximately 796 Premier Plus Owners.

69.     In the most recent Exchange Procedures Manual, Marriott has changed its designations to further damage Weeks Owners' ability to reserve weeks and devalue their interests.   Marriott now recognizes five categories of Points Owners – "Owner" (less than 4,000 points); "Select" (4,000-6,999 points); "Executive" (7,000-9,999 points); "Presidential" (10,000-14,999 points); and "Chairman's Club" (15,000+ points).   Each category enjoys reservation rights greater than Weeks Owners and there are no longer any limits on the number of such Points Owners granted preference.

**Negative Impact of the Points Program On Weeks Owners**

70.     Prior to Marriott's creation of the MVC Trust, the new points-based program, and its multisite timeshare operation, Weeks Owners' rights to reserve their Use Weeks were determined by their Home Resort's timeshare agreements

28

and they competed only with other Weeks Owners in their respective categories to reserve Use Weeks at their Home Resorts for the specific weeks they sought in their category in any given year. Consistent with applicable law, Marriott was not permitted to sell the right to use more than the total number of weeks in the category of unit they owned in their Home Resort. In particular, multiple Weeks Owners such as Mr. and Mrs. Michael Flynn paid for and were entitled to preferential reservation rights under the timeshare agreements.

71.     However, once the points program was implemented Weeks Owners, including particularly multiple Weeks Owners, such as Plaintiffs and the Class members began facing increased difficulty in reserving units at their designated times in light of the increasing number of Points Owners competing for reservations of the same categories of units and the advantageous reservation rights given to particularly elite Points Owners.

72.     The potential for conflict between the traditional and new timeshare models, absent careful inventory monitoring and control, is obvious. For instance, in situations where a Points Owner reserves just a weekend or checks in on a Thursday and departs on Monday, Weeks Owners, even multiple Weeks Owners, are precluded from reserving a week in that particular unit or use period, because the Points Owner has overlapped the required weekend check-in or check-out days

with which Weeks Owners must comply and Defendants insure that all MVC Trust owned units are automatically given the best units.

73.    Further, by creating preferred tiers of Point Owners and by having unilateral control of the number of points required to establish such status, Marriott substantially impaired the reservation rights of Plaintiffs and Class members by providing Points Owners with rights to reserve units in the Marriott Hawaii Timeshare Resorts that are better than the rights of Plaintiffs and Class members.

74.    In addition, to insure the success of the points model and particularly the ability of Points Owners to reserve use period, on information and belief, Marriott gives itself an unfair reservation preference.   Although the governing documents provide that all Owners will compete for reservations on a "first-come, first-served basis," on information and belief, Marriott gives itself greater priority and automatically reserves for itself use periods and units ahead of other Weeks Owners – and undoubtedly it reserves the best of available options.  To illustrate, if the MVC Trust owns twenty 2-bedroom units in Ko Olina Club, the moment the reservation window opens up thirteen months in advance (for multiple Weeks Owners), Marriott – through Marriott Hospitality and MVC Exchange Co. (which operate the reservation systems) and programs in its computer reservation system – automatically reserves for itself twenty units with the best view, in the best location within the resort, and during the most in-demand weeks.  In short, on

information and belief, Marriott skims from the *crème de la crème* of its inventory – leaving Weeks Owners, even multiple Weeks Owners, to compete for the chaff.

75.    This is a violation of the governing documents for the Marriott Hawaii Timeshare Resorts.   In the Ko Olina disclosure statement, for example, MORI states:

> **Since the Program Operator [Marriott Hospitality] is an affiliate of the Developer [MORI], certain conflicts of interest may arise.** For instance, since the Program Operator must prepare a budget for the Program, it will be faced with making decisions on which items are properly allocable to the Program and which are not. The Program Operator will, however, always seek to allocate costs properly and in accordance with the Program Documents. **In addition, since the Program Operator operates the reservation system for the Program and the Developer will be an Owner of Ownership Interests, a potential conflict of interest may arise with respect to the priority observing and confirming Use Periods between the Developer and other Owners.** *However, the Developer does not possess any greater priority with respect to reservation than any other Owner, and the Program.*[21]

76.    The Timeshare Agreements also make clear that MORI is entitled to reserve and have confirmed Use Periods for Ownership Interests it owns on the same basis as other Owners with Fixed or Floating time Rights.[22]

77.    On information and belief, Marriott awards itself greater priority with respect to reservation in violation of program documents.

---

[21] Disclosure Statement on Marriott Ownership Resorts, Inc. in the Ko Olina Beach Club Vacation Ownership Program, Registration No. TD-153, Ex. H at 1.
[22] *See, e.g.*, Waiohai Timeshare Agreement ¶ 6.12A; Ko Olina Club ¶ 6.12A; Maui Club ¶ 6.12A.

78.    This is consistent with Plaintiffs' experience of extreme difficulty reserving use periods despite being up and on their devices hours ahead of the time the reservation window opens and despite being on multiple devices simultaneously.

**Marriott's Unfair and Deceptive Sales Practices Target Plaintiffs and Members of The Class as Pre-Existing Owners of Weeks In Marriott Hawaii Timeshare Resorts**

79.    Since it created the points-based timeshare model, MVC has promoted and marketed its points-based product predominantly through its sales representatives at sales centers located in the Marriott Timeshare Resorts, including the Marriott Hawaii Timeshare Resorts:

> **We sell** our upscale tier vacation ownership products under the Marriott Vacation Club brand **primarily through our** worldwide network of **resort-based sales centers and certain off-site sales locations…** In 2013, **approximately 83 percent of our sales originated at one of our sales centers that are co-located with one of our resorts. We solicit our owners primarily while they are staying in our resorts**, but also offer our owners the opportunity to make additional purchases through direct phone sales, owner events and inquiries from our central customer service.[23]

---

[23] Marriott Vacations Worldwide Corp., Annual Report (Form 10-K) (February 27, 2014).  On information and belief, since the points program was created, every year at least **80%** of sales of Marriott's timeshare product originated at one of its sales centers which are co-located with one of its resorts: approximately 80% in 2011, 84% in 2012, 83 % in 2013, 80 % in 2014.

80.     Marriott trains and monitors its sales executives and representatives before allowing them to interact with customers to ensure they perform consistently and as directed.

81.     Marriott's sales approach for the points-based product has been primarily targeted at Weeks Owners:

> Since 2008, in response to decreased consumer demand, we curtailed some of our higher cost marketing channels and, more recently, **beginning in the middle of 2010, we focused our initial MVCD sales activities on existing Marriott Vacation Club owners due to the conversion to a points-based product. In 2012, the percentage of sales of vacation ownership products to our owners increased to approximately 63 percent. We solicit our owners to add to their ownership primarily while they are staying in our resorts**…

82.     To facilitate sales of its points product to existing Weeks Owners like Plaintiffs and other members of the putative class, Marriott not only specifically and falsely represents in sales presentations that a beneficial interests in the MVC Trust constitute real estate:   To further induce Weeks Owners to purchase the points-based product, Marriott deliberately and actively devalues the traditional

---

Marriott reports that, for the 2014 financial year, total contract sales increased by $29 million (driven by $20 million of higher contract sales in its North America segment).   The increase in timeshare contract sales in North America reflected a $12 million increase in sales at *on-site* sales locations Marriott Vacations Worldwide Corp., Annual Report (Form 10-K) (February 26, 2015) (Consolidated Results).

33

week ownership interests and frustrates Weeks Owners' abilities to utilize their Use Weeks.

83.    As an example of Marriott's deliberate devaluation, in its advertisements, Marriott unceasingly and unabashedly touts the advantage of the points in comparison to the weeks product, representing that when owners elect Vacation Club Points (1) they are "no longer locked into 7-night stays," (2) they are "no longer locked into weekend check-ins," (3) "[y]ou choose where and when you want to go. You aren't tied to a specific time of year," (4) "[y]ou aren't tied to the same place every year," and (5) "[o]wners in the Marriott Vacation Club Destinations™ program can choose from any location and any size villa, check in on any day they wish and stay as long as they want."[24]

84.    In fact, Marriott's skimming of the inventory coupled with the preferential reservation rights given to Points Owners inevitably result in devaluation of weekly timeshare interests.  When the Plaintiffs purchased their multiple weekly timeshare interests at Maui Club and Ko Olina Club, premier resorts, they bargained for the right to compete for the best weeks and best

---

[24] *See, e.g., Enjoy More Owner Benefits and Travel Options with Premier or Premier Plus Status,* http://www.marriottvacationclub.com/landing/csd/owner-benefits/2012-8/index.shtml (last visited Jan. 30, 2015); *Why Timeshare,* http://www.marriottvacationclub.com/timeshare-ownership/index.shtml (last visited Jan. 30, 2015); *How Vacation Club Points Work,* http://www.marriottvacationclub.com/timeshare-ownership/how-vacation-club-points-work.shtml (last visited Mar. 27, 2015).

apartment units and paid extra for the preferential reservation rights they initially enjoyed. Their weeks had high value: not only Home Resort-reservation value but also trading value, if the Plaintiffs decided not to use their Home Resort in a given year. If they are trading through Interval, the Plaintiffs would first reserve their week at their Home Resort and then deposit it with Interval. Now, with Points Owners' superior reservation rights and Marriott creaming its inventory to the advantage of the MVC Trust, the value of the weeks has gone down because the Plaintiffs' and Class members' ability to reserve quality units and get desirable use dates are significantly hampered. But, if the Plaintiffs decide that instead of using a poor quality unit or an undesirable use period they would rather stay at another premier Marriott timeshare resort during that particular use year, they are precluded from doing so without having to purchase additional points, because Marriott's current business model has the extended effect of devaluing the trading value of the weeks. The Plaintiffs no longer have the value they once did as a result of Marriott's inequitable business conduct.

85.   If Weeks Owners are unwilling to exchange their weekly interests for beneficial use interests in the MVC Trust, Marriott sales representatives uniformly tell Weeks Owners that the beneficial interests: constitute real property, just as are their weekly timeshare interests; will restore and enhance the trading power and

competitive value of their devalued weekly timeshare interests; will allow them to extend their stay; allow them to upgrade their units, *inter alia*.

86.     By the end of 2013, almost 134,000 weeks-based owners had enrolled over 233,000 weeks in the points program, and of these owners who enrolled weeks with one of Marriott's sales executives, approximately *45* percent also purchased points.[25]

87.     Having no reason to suspect or know that Marriott's advertising and marketing activities are unfair, deceptive and fraudulent, in 2014, Mr. and Mrs. Patrick Flynn purchased 1500 points to buttress and protect the value of their weekly timeshare interest.  While staying at Newport Coast Villas in 2014, Mr. and Mrs. Patrick Flynn bought the points product because they were specifically told by Marriott sales representative Mike Mogera that the points (1) constitute real estate; (2) would protect and restore the value of the their weekly interests (including the trading value and reservation value) and restore their competitive advantage; and (3) would allow them to extend their stay at the resorts (for instance, so they could stay a week +2 days as opposed to a week).  (In fact, Patrick Flynn recalls Marriott sales representatives making some combination of these representations about the utility of the points at every sales presentation he attended.)

------

[25] Marriott Vacations Worldwide Corp., Annual Report (Form 10-K) (February 27, 2014).

88.     This is the only reason a Weeks Owner would buy 1500 points – to achieve these purported benefits, since that number of points have no other value.

89.     Mr. and Mrs. Patrick Flynn paid $18,180 for 1500 points and now pay approximately $927.50 in maintenance annually related to those points.  Yet, Mr. and Mrs. Patrick Flynn have a point product that is in fact not real estate.

90.     Mr. and Mrs. Patrick Flynn are, however, stuck with exorbitant maintenance fees.

91.     The points-based timeshare plan allows Marriott to charge Points Owners distorted maintenance fees higher than those paid by Weeks Owners and thereby spread the cost of maintaining Marriott's remaining interests in each resort among Points Owners.  For example, for 2015, Mr. and Mrs. Patrick Flynn pay approximately $1,951.84 in maintenance fees for their weekly interest at Ko Olina Club.  That week is deemed by Marriott to be worth approximately 4950 points. This equals approximately $0.39 per point of "value" for the week as determined by Marriott.  However, for the 1500 points Mr. and Mrs. Patrick Flynn purchased – significantly fewer points than the week is worth according to Marriott's points allocation – they pay $927.50 in maintenance fees.  The maintenance fee alone for the points thus equals $0.62 per point.

92.     Marriott is thereby unjustly enriched by this conduct,[26] as Marriott has reduced the amount it must pay to the various Associations of the Marriott Timeshare Resorts and spreads that cost among Points Owners, such as sub-Class Members, who it induces to purchase points by misrepresenting the nature of the points and actively devaluing the weekly timeshare interests.    Rather than acquiring the additional benefits promised, upon purchasing the points, Mr. and Mrs. Patrick Flynn and the sub-Class members have incurred an obligation to pay a share of total maintenance cost for approximately 60 Marriott Timeshare Resorts.

## V.

## CLASS ACTION ALLEGATIONS

---

[26] Since inception of the points program, MVC has had between 54 and 64 timeshare resorts. With five resorts, Hawaii's representative share of Marriott's portfolio is between 7.8 to 9.26 percent.  As shown above, by the end of 2013, approximately 60,300 weeks owners also purchased points (134,000 x .45) (*see supra* ¶ 87).  At a very conservative estimate (especially considering that Hawaii is one of the more popular destinations and likely generates a large portion of points sales), at least 4,703 of Weeks Owners who also purchased points belong to the putative sub-Class (60,300 x .078 --i.e., Hawaii's representative share at 7.8 %).

On information and belief, purchasers buy a minimum of 1000 or 1500 points.  Under Marriott's own valuation of its points product, points have sold at a low of approximately $10 per point and the current high of roughly $12.24 per point.  Therefore, even at extremely conservative estimates, Marriott has made $47,030,000 from sales to the putative sub-Class members while engaged in the deceptive and unlawful conduct discussed herein.  This $47,030,000 figure does not take into account fees and other costs paid by purchasers or the monies Marriott Hospitality makes from its management contracts as concerns the points product.

93.    Plaintiffs bring this class action under the provisions of Federal Rule of Civil Procedure 23, individually and on behalf of the following Class consisting of two sub-Classes.

94.    The proposed Class consists of two sub-classes, one represented by Mr. and Mrs. Michael Flynn and the other represented by Mr. and Mrs. Patrick Flynn.   The Michael Flynn sub-Class is defined as all natural persons who purchased and now own weekly timeshare interest(s) in the Marriott Hawaii Timeshare Resorts (Marriott's Kauai Beach Club, Marriott's Kauai Lagoons–Kalanipu'u, Marriott's Waiohai Beach Club, Marriott's Maui Ocean Club, and Marriott's Ko Olina Beach Club) and who have not purchased points.

95.    Mr. and Mrs. Michael Flynn are members and putative representatives of this proposed sub-class.

96.    The other proposed sub-class is defined as all natural persons who purchased and have retained weekly timeshare interest(s) in the Marriott Hawaii Timeshare Resorts (Marriott's Kauai Beach Club, Marriott's Kauai Lagoons–Kalanipu'u, Marriott's Waiohai Beach Club, Marriott's Maui Ocean Club, and Marriott's Ko Olina Beach Club) who have also purchased and retained beneficial interests in the MVC Trust.

97.    Mr. and Mrs. Patrick Flynn are members and putative representatives of the proposed sub-Class.

98.     Excluded from the Class are Defendants and any entity or person who is an owner of beneficial interests in the MVC Trust but not a Weeks Owner.  Also excluded from the Class is any person who is a citizen of the State of Florida.

99.     The aggregate number of members of all proposed plaintiff classes is sufficiently numerous, as it is believed to include thousands of persons who purchased and continue to own week ownership interests in the Marriott Hawaii Timeshare Resorts and those who subsequently purchased beneficial interests in the MVC Trust but retained ownership of their weekly interests, who have suffered from the Defendants' violations of state timeshare laws and consumer protection statutes.  The members of the classes are geographically disbursed throughout the United States (excluding Florida) and possibly other nations but all own real property interests in the form of "timeshare ownership" interests in the Marriott Hawaii Timeshare Resorts.  Individual joinder of the class members in a single action is impracticable.  The disposition of each class member's claims in this action will provide substantial benefits to the parties.

100.    The Defendants have acted with respect to Plaintiffs and members of the proposed classes in a manner generally applicable to each of them.  There is a well-defined community of interest in the questions of law and fact involved in this action and the rights of each class member were similarly violated due to Defendants' unlawful conduct described herein.  These common questions of law

40

and fact substantially predominate over any questions that may affect each particular class member. These common questions of law and fact include the following:

    a.  whether Defendants breached the governing documents for the Marriott Hawaii Timeshare Resorts;

    b.  whether Defendants violated Hawaii Consumer Protection Statutes, including whether the Defendants:

        i.   made material misrepresentations or engaged in practices likely to mislead consumers acting reasonably under the circumstances;

        ii.   represented that their services had characteristics, uses, or benefits that they did not have;

        iii.   represented that their services were of a particular standard or quality when they are of another;

        iv.   advertised services with intent not to sell them as advertised;

        v.   advertised services with intent not to supply reasonably expectable public demand; and

        vi.   engaged in other conduct which similarly created a likelihood of misunderstanding;

    c.  whether Defendants violated the Hawaii Time Sharing Plans Act, including whether Defendants:

41

     i.    violated the one-to-one use-right to use-night requirement;

     ii.    misrepresented the amount of time or period of time the timeshare units in the Marriott Hawaii Timeshare Resorts will be available to any purchaser;

     iii.    misrepresented the size, nature, extent, qualities, or characteristics of the offered timeshare units;

     iv.    misrepresented the nature or extent of services incident to the timeshare unit;

     v.    misrepresented or deceptively represented material facts concerning the Hawaii timeshare plans or timeshare units; and

     vi.    failed to honor and comply with all provisions of the contracts or reservation agreements with purchasers.

d.  whether the Class members are entitled to equitable relief in the form of an order compelling Marriott to institute an independent annual audit of its points and weekly timeshare inventories to ensure compliance with the one-to-one use-right to use-night requirement;

e.  whether Class members are entitled to actual, compensatory, treble, special, and punitive damages; and

f.  whether Class members are entitled to attorney's fees and costs, and any other relief deemed just and proper.

101.   Plaintiffs' claims are typical of the claims of all members of the proposed classes they seek to represent.

102.   Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no interests that are antagonistic to or which conflict with those of other Class members.   Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them.   Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

103.   The class action is superior to other available means for the fair and efficient adjudication of the claims.   The injury suffered by each individual Class member may be limited.   Injuries of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.   Further, it would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.   Individualized litigation presents a potential for inconsistent or contradictory judgments.   Individualized litigation increases the delay and expense to all parties and the system presented by the complex legal and factual issues of the case.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

104.    Accordingly, class certification is appropriate.

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

(Against MVC, MVC Exchange Co., MORI, MKORI, Kauai Lagoons, and Marriott Hospitality)

105.    Plaintiffs repeat and reallege all the allegations of paragraphs 1 through 104 as if fully set forth herein, including paragraphs 41 to 47 which discuss particular contract provisions.

106.    The Hawaii Timeshare Agreements and other governing documents are directly or indirectly binding and enforceable agreements between the Defendants and the Class members.

107.    Plaintiffs and other members of the Class paid for their weekly timeshare interests and have paid association fees, assessments, taxes, maintenance fees, and all other relevant fees required by the agreements.

108.    Plaintiffs and other members of the Class have fully performed.

109.    The Defendants fail to perform as required by the Parties' agreement and have materially violated the agreement.

110.    Since Marriott created and began operating the points-based timeshare model, it no longer operates the week ownership timeshare model as Class members bargained for and fail to effectively operate the services necessary to ensure that

44

Class members are able to utilize their week ownership interests. The Defendants are materially and adversely affecting the Class members' use rights provided by their Home Resorts' timeshare agreements and program documents.

111.   Class members no longer compete solely with other Weeks Owners in their respective categories to reserve Use Weeks at their Home Resorts. Instead, Class members are competing with Points Owners for reservations of the same categories of units. Marriott gives Points Owners greater reservation rights and preferences than Class members. As a result, Class members have faced increased difficulty in reserving their use periods.

112.   Further, on information and belief, through Marriott Hospitality and MVC Exchange Co., MVC and MORI designed and operate the computer reservation systems so that use periods associated with interests owned by the MVC Trust are automatically reserved for Marriott – including the best units and popular use periods. This is a violation of the Parties' agreement that Marriott has no greater reservation or use rights than other Weeks Owners and possesses no "greater priority with respect to reservation than any other Owner." This is also a violation of the Parties' agreement that reservation will equitably be on a "first-come, first-served" basis. In addition, it is a violation of the Parties' agreement that Weeks Owners would compete only with other Weeks Owners for the units in

45

which they have an interest – as is emphasized in disclosure statements filed with the State of Hawaii.

113.   This distorted reservation process explains why Plaintiffs and Class members have experienced difficulties when making reservations each year since the points program has been operational, even though they are up at the crack of dawn with multiple devices in hand and ready to place their reservations the second reservation channels open.  As a result, they have been required to accept less desirable units and dates, which is not what they bargained and paid handsomely for.

114.   Defendants have also violated the Parties' agreement that the one-to-one use-right to use-night requirement will be maintained.  (*See infra* "Count IV.")

115.   Additionally, Defendants have violated the Timeshare Agreements' requirement that no Owner (including Marriott) transfer or mortgage ownership interests in a manner that otherwise affect another Owner's Ownership Interest. Marriott transferred its unsold interests to MVC Trust and thus created an entirely new class of owners that competes with Weeks Owners and which has led to the diminution in value of week ownership interests.  Marriott did not specifically reserve any right that permitted such transfer.

116.   MVC and MORI have violated Class members' ownership rights under the governing documents by deliberately and actively undermining week

ownership interests in advertisements. Defendants also impair Class members' ownership and use rights by utilizing an arbitrary points value system in conjunction with the reservation preferences granted to Points Owners to diminish the value of week ownership interests.

117.   Because of these breaches by the Defendants, Plaintiffs and other members of the Class have suffered damage, including, but not limited to: (1) loss of property, (2) loss of money, (3) extreme difficulties in reserving their Use Weeks because Points Owners have been given greater rights to compete for the same timeshare interests and Marriott is self-servingly skimming the inventory in which the Class has an interest, and (4) a diminution in the value of the week ownership interests.

118.   Plaintiffs and other members of the Class are therefore entitled to all legally available remedies.

## COUNT II

### DEFENDANTS' BREACH OF THE IMPLIED
### COVENANT OF GOOD FAITH AND FAIR DEALING

(Against MVC, MVC Exchange Co., MORI, MKORI, Kauai Lagoons, and Marriott Hospitality)

119.   Plaintiffs repeat and reallege all the allegations of paragraphs 1 through 104, inclusive, as if fully set forth herein.

47

120.    Defendants breached the implied covenant of good faith and fair dealing.  As fully illustrated above:

121.    Plaintiffs and other members of the Class entered into valid, enforceable agreements with the Defendants;

122.    Plaintiffs and other members of the Class did all, or substantially all of the significant things that the contract required them to do, including meeting their financial obligations;

123.    All conditions required for the Defendants' performance have occurred;

124.    Defendants rendered imperfect performance and unfairly interfered with the Class members' rights to receive the benefits of the contract, that is, their rights to the full use and enjoyment of their weeks ownership interests; and

125.    Plaintiffs and other members of the Class suffered damage as a result of the Defendants unlawful conduct.


## COUNT III

### DEFENDANTS' VIOLATION
### OF HAWAII CONSUMER PROTECTION STATUTES

(Against all Defendants)

126.    Plaintiffs repeat and reallege all the allegations of paragraphs 1 through 104, inclusive, as if fully set forth herein.

48

127.    Defendants' business acts and practices, fully described above, constitute unlawful, unfair, and deceptive acts or practices in the conduct of their trade or commerce as contemplated by, and in violation of, Hawaii Consumer Protection Statutes, including sections 480-1 to 480-24 and 481A-1, *et seq.*, Hawaii Revised Statutes (2013).

128.    Plaintiffs and other members of the class are "consumers" as defined by section 480-1 of the consumer protection statutes because they are natural persons who, primarily for personal, family, or household purposes, purchased services or committed money, property or services in a personal investment (here, the timeshare program).

129.    Further, Plaintiffs have met all requirements necessary to bring this class action.

130.    Defendants' conduct, discussed herein, constitutes **unlawful** business practices and acts in violation of Hawaii Consumer Protection Statutes and also (**1**) violate Chapter 514E, Hawaii Statutes (2013), particularly the statute's one-to-one use-right to use-night requirement; (**2**) constitute breaches of valid and enforceable agreements; (**3**) breach the implied covenant of good faith and fair dealing by injuring the rights of the Class members to receive the benefits of the contract and preventing the Class members from being able to take full advantage of their ownership interests; and (**4**) constitute unlawful misrepresentations because the

49

Defendants have actively misled the Class members with regards to the product, services, and/or property they were to receive upon purchase of their weeks ownership timeshare interests.

131.   Defendants deliberately undermine Class members' ability to fully use and enjoy their timeshare interests and undermine the value of Class members' weekly timeshare interests in order to induce Class Members to purchase the points interests.

132.   Defendants then misrepresent to Class members that purchase of the points interests (as little as 1000 or 1500), *inter alia*, will help Class members restore the value and benefit of their week ownership and that the points product constitute real estate.

133.   Based on this misrepresentation, Mr. and Mrs. Patrick Flynn purchased 1500 points from Mike Mogera at Newport Coast Villas in 2014.

134.   In addition to being induced to purchase the points, Mr. and Mrs. Patrick Flynn and the sub-Class members are subjected to higher maintenance fees (compared to fees paid for weekly timeshare interests) for the points interests purchased.  The MVC Trust and the other Defendants are unjustly enriched as a result of this conduct.

135.   The Defendants' conduct discussed herein also constitutes **unfair** business practices and acts, in contravention of public policy and are immoral,

50

unethical, oppressive, unscrupulous, or substantially injurious to consumers.  It is especially unfair that, on information and belief, MVC and the developer Defendants, through Marriott Hospitality and MVC Exchange Co., have designed a system that gives Marriott reservation preferences in derogation of Weeks Owners' reservation and use rights.

136.   The Defendants engaged in, and continue to engage in, **deceptive** trade practices because, as described above, in the course of their business they:

a. made material misrepresentations or engaged in practices likely to mislead consumers (and which misled and deceived the Class members) acting reasonably under the circumstances (e.g., misrepresentation about the points as real estate);

b. represented that services had characteristics, uses, or benefits that they did not have;

c. represented that services were of a particular standard, quality, or grade when they are of another;

d. advertised services with intent not to sell them as advertised;

e. advertised services with intent not to supply reasonably expectable public demand; and

f. engaged in other conduct which similarly created a likelihood of misunderstanding or confusion

51

137. The Defendants' business acts and practices discussed herein are also **fraudulent**. Material facts were concealed by inaccurate representations. Misleading statements made by the Defendants are likely to deceive reasonable consumers, such as Mr. and Mrs. Patrick Flynn.

138. Therefore, the Defendants have violated Hawaii Consumer Protection Statutes, including sections 480-1 – 480-24 and section 481A-3, subsections (5), (7), (9), (10), and (12).

139. As discussed above, Plaintiffs and other members of the Class have suffered actual damages as a result of the Defendants' unlawful, unfair, and deceptive acts or practices, including damage to their property.

## COUNT IV

### VIOLATION OF HAWAII TIMESHARE STATUTE, HAW. REV. STAT. § 514E-1, *ET SEQ*.

(Against MORI, MKORI, and Kauai Lagoons)

140. Plaintiffs repeat and reallege all the allegations of paragraphs 1 through 104, inclusive, as if fully set forth herein.

141. The Defendants are "developers" within the meaning of Hawaii Time Sharing Plans Act, section 514E-1, *et seq*., and have an obligation to comply with the statute's one-to-one use-right to use-night requirement.

142. Under the timeshare statute, the Defendants cannot offer or dispose of timeshare units or timeshare interests in the Marriott Hawaii

52

Timeshare Resorts unless the one-to-one use-right to use-night requirement is satisfied <u>and continues to be satisfied for the duration of the Hawaii timeshare plans</u>.

143.    The Defendants failed to fulfil their obligation and violated the statute by implementation and operation of the new timeshare model because, with the exponentially increasing number of Points Owners, the sum of nights which owners are entitled to use in a given year, on information and belief, has exceeded the number of nights available for use by those owners during that year.

144.    In other words, the Defendants have violated the one-to-one use-right to use-night requirement by, on information and belief, failing to assure the right and practical ability of each owner to use a timeshare unit for the maximum number of nights to which the owner is entitled.

145.    Class members have experienced increased difficulty or inability to reserve their Use Weeks.  On information and belief, this is a result of (1) Marriott skimming from the inventory to which Plaintiffs and Class Members are entitled and (2) the infinite and exponentially growing number of Points Owners competing with the Class for the same finite number of premier units and use periods.

146.    As alleged above, Plaintiffs bargained for (and Marriot agreed to) the right to compete fairly with other Weeks Owners (and to compete for the best use periods).  Initially, the Plaintiffs enjoyed this right and were able to reserve quality units, hassle-free.   Since the points program, the Class members' use rights have been impaired by (on information and belief) Marriott's unfair practice of scooping up a portion of the quality inventory before the Class members even have a chance to compete.  It is no longer an equitable first-come, first-served reservation process but rather a system rigged to Marriott's and the MVC Trust's advantage.   This drastically limits the inventory available to the Class.  Additionally, as is evident even from a mere look at the numbers,[27]  the growing number of Points Owners, whom Marriott has given superior reservation rights, are also competing for use of the inventory in which the Class members have use rights.  Even worse, Marriott's new Points Owner hierarchy appears to have removed any limits that were in place on the number of elite points owners (who get reservation preferences above and beyond all other Marriott timeshare owners).  Therefore, now, an unlimited number of persons with superior reservation advantages will always be able to reserve use periods within the Class members' use categories.

---

[27] As of January 2, 2015 and January 3, 2014, the MVC Trust comprises of 259,428,250 and 230,465,750 points, respectively.

54

147.     Marriott's imposition on the Plaintiffs' and Class members' use rights, thereby impeding their ability to reserve and use their interests, violates the Timeshare Act's one-to-one use-right to use-night requirement.

148.     As a result of Defendants' violation of the Hawaii Time Sharing Plans Act, Plaintiffs and other members of the Class have suffered damages, including, but not limited to: (1) loss of property, (2) loss of money, (3) extreme difficulties or inability in reserving their use periods, and (4) a diminution in the value of weeks ownership interests.

## COUNT V

### UNFAIR AND DECEPTIVE PRACTICES
### IN VIOLATION OF CHAPTERS 480 AND 514E

(Against MVC, MORI, MKORI, Kauai Lagoons)

149.     Plaintiffs repeat and reallege all the allegations of paragraphs 1 through 104, inclusive, as if fully set forth herein.

150.     Defendants are "developers" and or "sales agent" within the meaning of the Hawaii Time Sharing Plans Act, Haw. Rev. Stat. § 514E-1, *et seq.*

151.     Pursuant to the Hawaii Time Sharing Plans Act, Defendants have engaged in unfair and deceptive practices in violation of chapter 480, Hawaii Revised Statutes (2013) by:

a. misrepresenting the amount of time or period of time the timeshare units in the Marriott Hawaii Timeshare Resorts will be available to any purchaser;

b. misrepresenting the size, nature, extent, qualities, or characteristics of the offered timeshare units;

c. misrepresenting the nature or extent of services incident to the timeshare unit;

d. misrepresenting or deceptively representing material facts concerning the Hawaii timeshare plans or timeshare units; and

e. failing to honor and comply with all provisions of the contracts or reservation agreements with purchasers.

152.    As a result of Defendants' unfair and deceptive practices described herein, the Plaintiffs and other members of the Class have suffered damages, including but not limited to loss of property and loss of money.

## GENERAL RELIEF SOUGHT

**WHEREFORE,** Plaintiffs respectfully request the following relief:

A.  **AS TO ALL COUNTS**:

i.    an order certifying this action to proceed as a class action and appointing (1) Mr. and Mrs. Michael Flynn and Mr. and Mrs. Patrick Flynn as Class representatives of the sub-classes identified above, and (2) undersigned counsel as counsel to represent the putative classes;

ii.   attorney's fees and costs; and

iii.  an award of prejudgment interest.

56

**B.   RESCISSION**:

Based on the allegations herein, Mr. and Mrs. Patrick Flynn seek to rescind the points purchase contract.

**C.   AS TO COUNT I**:

     i.   compensatory damages;

    ii.   general damages;

   iii.   special damages; and

   iv.   any and all such relief deemed just and proper, including injunctive relief to force Marriott to modify its reservation procedures.

**D.   AS TO COUNT II**:

     i.   compensatory damages;

    ii.   general damages;

   iii.   special damages; and

   iv.   any and all such relief deemed just and proper.

**E.   AS TO COUNT III**:

     i.   actual damages;

    ii.   compensatory damages;

   iii.   treble damages;

   iv.   punitive damages;

    v.   injunctive relief: (1) an order from this Court requiring Marriott to institute an annual audit of its points and weekly timeshare inventories, to be conducted by independent, certified professionals, and (2) an order from this Court requiring Marriott to provide an effective mechanism to insure the priority reservation rights at Class members' Home

57

Resorts for use periods or units in which they have an interest as intended by the timeshare agreements (including an eleven to thirteen months exclusive priority period and an exclusive telephone line for Weeks Owners trying to make reservations in their Hawaii Home Resorts); and

vi.    any and all other relief deemed just and proper.

**F.   AS TO COUNT IV**:

i.    actual damages;

ii.    special damages; and

iii.    any and all other relief deemed just and proper.

**G.   AS TO COUNT V**:

i.    statutory damages, actual damages, and special damages pursuant to the Hawaii Time Sharing Plans Act;

ii.    actual damages, compensatory damages, treble damages, punitive damages and injunctive relief pursuant to Chapter 480; and

iii.    any and all other relief deemed just and proper.

Dated: Honolulu, Hawaii, September _30_, 2015

DAVIS LEVIN LIVINGSTON
    MARK S. DAVIS
    MICHAEL K. LIVINGSTON
    ERIN C. DAVIS
COLSON HICKS EIDSON
    JOSEPH M. MATTHEWS
    LATOYA C. BROWN
RUBINSON LAW
    SETH I. RUBINSON
*Attorneys for Plaintiffs*

58

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

demand a trial by jury on all issues so triable.

Dated: Honolulu, Hawaii, September _30_, 2015

DAVIS LEVIN LIVINGSTON
    MARK S. DAVIS
    MICHAEL K. LIVINGSTON
    ERIN C. DAVIS

COLSON HICKS EIDSON
    JOSEPH M. MATTHEWS
    LATOYA C. BROWN

RUBINSON LAW
    SETH I. RUBINSON

*Attorneys for Plaintiffs*