IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
*Feb 29, 2016*
SUE BEITIA, CLERK

| | |
|---|---|
| MICHAEL KEVIN FLYNN; MARLA KAY FLYNN; and PATRICK R. FLYNN and MARY KAY FLYNN, Trustees of the Flynn Family Trust,<br><br>          Plaintiffs,<br><br>     vs.<br><br>MARRIOTT OWNERSHIP RESORTS, INC., a Delaware corporation; ET AL.,<br><br>          Defendants.<br>_____ | CIVIL 15-00394 LEK-BMK |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

On December 24, 2015, Defendants Marriott Ownership Resorts, Inc. ("MORI"); Marriott Vacations Worldwide Corporation, doing business as Marriott Vacations Club ("MVC"); Marriott Resorts, Travel Company, Inc., doing business as MVC Exchange Company ("MVC Exchange"); Marriott Resorts Hospitality Corporation ("Marriott Hospitality"); First American Trust, FSB ("the Trustee"); MVC Trust; Kauai Lagoons LLC ("Kauai Lagoons"); and Marriott Kauai Ownership Resorts, Inc., doing business as Marriott Vacation Club International ("MKORI," all collectively, "Defendants"), filed their Motion to Dismiss the Complaint ("Motion"). [Dkt. no. 24.] Plaintiffs Michael Kevin Flynn and Marla Kay Flynn; and Plaintiffs Patrick R. Flynn and Mary Kay Flynn, Trustees of the Flynn Family Trust, (all collectively,

"Plaintiffs") filed their memorandum in opposition on January 22, 2016, and Defendants filed their reply on February 5, 2016. [Dkt. nos. 26, 27.]  This matter came on for hearing on February 16, 2016.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

**BACKGROUND**

## I.   **The Complaint**

Plaintiffs filed their Class Action Complaint ("Complaint") on October 2, 2015.[1]  According to the Complaint, in 2004, Michael and Marla Flynn purchased from MORI "a week ownership interest in an Ocean View Two Bedroom Makai Unit" at Marriott's Ko Olina Beach Club ("Ko Olina"), and, in 2005, they purchased from MORI "a week ownership interest in an Ocean View Two Bedroom Unit" at Ko Olina.  [Complaint at ¶ 19.]  In 2013, they purchased from a third party an odd-year week ownership interest at Ko Olina.  [Id.]  In 2006, they upgraded a week ownership interest at Marriott's Maui Ocean Club ("Maui Ocean") to "a Two Bedroom Ocean View Unit" in a newer phase of the resort.  In 2007, they purchased from MORI "a Three Bedroom Ocean Front Unit" at the Maui Ocean.  [Id. at ¶ 20.]

---

[1] Plaintiffs' class allegations are not relevant to the instant Motion, and the Court will not address them at this time.

In 2004, Plaintiffs Patrick R. Flynn and Mary Kay Flynn, Trustees of the Flynn Family Trust ("Patrick and Mary Flynn"), purchased from MORI "a week ownership interest in an Ocean View Two Bedroom Unit" at Ko Olina.  In 2006, they purchased from MORI "a week ownership interest in an Ocean View Two Bedroom Unit" at Maui Ocean.  In 2007, they purchased "a Platinum season timeshare interest in Marriott's Newport Coast Villas" ("Newport Coast").  [Id. at ¶ 23.]

According to the Complaint, in 2010, Marriott[2] owned tens of thousands of unsold timeshare interests in various resorts.  In part to sell this inventory, Marriott created a points-based timeshare program ("Destination Program" or "Points-Based Program"), in which timeshare owners are allotted points that they use to reserve stays at various Marriott timeshare resorts ("Points Owners").  Marriott transferred its unsold inventory of timeshare interests to the MVC Trust, and the Points Owners buy beneficial interests ("BIs") in the trust.  Plaintiffs allege that the Points-Based Program is radically different from Marriott's traditional timeshare program ("Weeks-Based Program"), in which the timeshare owners ("Week Owners") buy weeks during a specific period at a specific resort ("Home Resort").  Marriott has attempted to convince the Week Owners to convert their

---

[2] Plaintiffs' Complaint use the name "Marriott" to refer collectively to all Defendants except the Trustee.  [Complaint at ¶ 39.]

timeshare interests to BIs, and, if a Week Owner declines, Marriott attempts to sell him points as a supplement to his interest in the Weeks-Based Program.  [Id. at ¶¶ 2-3.]  Michael and Marla Flynn do not own any interest in the Points-Based Program.  [Id. at ¶ 21.]  In 2014, during a stay at Newport Coast, Patrick and Mary Flynn purchased from MORI an interest in the Points-Based Program.  [Id. at ¶ 24.]

MVC reports that, as of January 2, 2015, it operates fifty-eight properties ("Marriott Timeshare Resorts") with 12,866 units, and there are approximately 415,000 timeshare owners. There are five Hawai`i timeshare resorts ("Hawai`i Marriott Timeshare Resorts") – including Maui Ocean and Ko Olina – among the fifty-eight.  [Id. at ¶ 27.]  The Complaint alleges that Marriott Hospitality is a wholly-owned subsidiary of MORI, and it is the managing agent/operator of some of the Marriott Timeshare Resorts, including the Hawai`i Marriott Timeshare Resorts.  [Id. at ¶ 33.]  MVC Exchange is also a wholly-owned subsidiary of MORI.  It "provides exchange and reservation services as the operator of the Marriott Vacation Club Destinations Exchange Program ('the Exchange Program')."  [Id. at ¶ 31.]  The Exchange Program, which was introduced with the Points-Based Program, allows Points Owners to exchange their points-based interests. [Id. at ¶ 61.]

## I.   <u>Allegations Regarding the Ability to Use Timeshare Units</u>

Plaintiffs argue that: Marriott operates the Weeks-Based Program and the Points-Based Program "in a manner that sacrifices the use right of one set of owners for the betterment of another set"; and this practice "is inequitable and unlawful." [<u>Id.</u> at ¶ 4.]  Plaintiffs argue that Marriott "unfairly gives superior reservation and use rights" to the Points Owners, of whom there is "an exponentially growing number."  [<u>Id.</u> at ¶ 5.] The competition from the Points Owners allegedly prevents the Week Owners – particularly those like Plaintiffs who own multiple weekly interests in premier resorts, such as the Hawai`i Marriott Timeshare Resorts ("Multi-Week Owners") – from exercising their stay rights.  In addition to the increased competition from the Points Owners in general, Marriott allegedly reserves the best units and weeks for the MVC Trust, thereby depriving the Week Owners of the chance to compete fairly for those units and weeks.[3]  The Week Owners must compete for the lower quality units and less desirable weeks that remain after the skimming process. [<u>Id.</u>]  Plaintiffs argue that Marriott's practices violate:

> (1) [Plaintiffs'] reservation and use rights,
> (2) [Plaintiffs'] right to compete on an equitable
> "first-come, first-served" basis with other owners
> of weekly timeshare interests, and (3) Marriott's
> promise to not compete unfairly with its owners by

---

[3] Plaintiffs refer to this alleged practice as "skimming." <u>See, e.g.</u>, Complaint at ¶ 84.

awarding itself greater reservation rights with
respect to its ownership interests.

[Id.]  In addition, Plaintiffs argue that Marriott's practices
violate: the statutory prohibition against selling a use week to
more than one purchaser, *i.e.* the "one-to-one use-right to use-
night requirement" ("One-to-One Rule"); and the consumer
protection laws that prohibit unfair and unlawful conduct.  [Id.
at ¶ 6.]

Plaintiffs state that, when Marriott sells the BIs in
the Points-Based Program, it refers to them as "timeshare
estates."  Plaintiffs argue that this misleads the Week Owners
into believing that, when they purchase points to supplement
their week-based interests, they are purchasing real estate
interests.  Plaintiffs assert that, when the Week Owners purchase
supplemental points, "they become liable for a share of
maintenance fees for Marriott's unsold timeshare interests in all
resorts Marriott has included in the MVC Trust."  [Id. at ¶ 7.]
Patrick and Mary Flynn pay annual maintenance and enrollment fees
for their BIs in the MVC Trust.  The amount of the fees in 2015
was approximately $927.50.  [Id. at ¶ 24.]

Plaintiffs refer to the declarations of covenants,
conditions and restrictions for the Marriott Hawai`i Timeshare
Resorts (collectively, "Declarations") as the governing documents
for their timeshare interests.  The Declarations are publicly
filed with either the State of Hawai`i Office of the Assistant

6

Registrar, Land Court ("Land Court") or the State of Hawai`i

Bureau of Conveyances ("BOC"). [Id. at ¶ 17, Exhs. C-G.[4]]  The

Declarations reserve certain specific rights for MORI, Kauai

Lagoons, and MKORI (collectively, "Developer Defendants").

According to Plaintiffs, the Declarations state that "no

timeshare owner, including the developer entities, can transfer

or mortgage ownership interests in a manner that 'otherwise

affect another Owner's Ownership Interest,' and an Owner can

transfer only the Owner's respective interests." [Complaint at

¶ 43.]  Plaintiffs argue that, "[a]s owners of interests in the

Hawaii Timeshare Resorts, absent any specifically reserved

rights, MKORI, MORI and Kauai Lagoons are entitled to reserve and

have confirmed use periods on the same basis as other owners –

the developers have no greater reservation rights than Weeks

Owners." [Id. at ¶ 45.]

_____

[4] Exhibit C is the Maui Ocean Club Vacation Ownership
Program Declaration of Covenants, Conditions and Restrictions
("Maui Ocean Declaration"), filed on October 7, 1999 with the
Land Court as document number 2580210; Exhibit D is the Ko Olina
Beach Club Vacation Ownership Program Declaration of Covenants,
Conditions and Restrictions ("Ko Olina Declaration"), filed on
September 24, 2001 with the Land Court as document number
2739367;  Exhibit E is Marriott's Kauai Beach Club Vacation
Ownership Program Declaration of Covenants, Conditions and
Restrictions, filed on July 7, 1995 with the Land Court as
document number 2248015;  Exhibit F is the Kalanipu`u Vacation
Ownership Program Declaration of Covenants, Conditions and
Restrictions, filed on February 9, 2010 with the BOC as document
number 2010-018377; and Exhibit G is the Waiohai Beach Club
Vacation Ownership Program Declaration of Covenants, Conditions
and Restrictions, filed on March 28, 2011 with the Land Court as
document number 2692944.

According to Plaintiffs, the disclosure statements that they received among their contract documents ("Disclosure Statements") explain the timeshare program.  The Disclosure Statements emphasize that the Week Owners "bargain to compete only with other Weeks Owners 'on a first come, first served basis' for accommodations twelve months in advance" – and thirteen months in advance for Multi-Week Owners.  [Id. at ¶ 46 & n.17.[5]]  They also state that "the developer possesses 'no greater priority with respect to reservation than any other Owner, and the Program Operator will always seek to assign Use Periods on an equitable basis among all Owners, including the Developer.'"  [Id. at ¶ 47 & n.18.[6]]

Plaintiffs argue that Points Owners are not subject to the restrictions that Week Owners are subject to.  According to

_____

[5] The Disclosure Statement on Marriott Ownership Resorts, Inc. in the Ko Olina Beach Club Vacation Ownership Program ("Ko Olina Disclosure Statement") states: "Owners will have the ability to request a reservation for a seven (7) night stay for an accommodation for a check-in day on a first-come, first-served basis, with other Owners, beginning twelve months in advance of the requested check-in day."  [Complaint, Exh. H at 4, § 3.C(6)(a)(iii).]  The Disclosure Statement on Marriott Ownership Resorts, Inc. in the Maui Ocean Club Vacation Ownership Program ("Maui Ocean Disclosure Statement") apparently contains a substantively identical provision.  [Id., Exh. I (excerpts of Maui Ocean Disclosure Statement) at 5, § iii.]

[6] The Ko Olina Disclosure Statement states, "the Developer does not possess any greater priority with respect to reservation than any other Owner, and the Program Operator[ – Marriot Hospitality –] will always seek to assign Use Periods on an equitable basis among all Owners, including the Developer." [Complaint, Exh. H at 1, § 2.]

the MVC website, Points Owners can "'chose from any location and any size villa, check in on any day they wish and stay as long as they want.'"  [Id. at ¶ 66.]  In addition, Points Owners with Premier or Premier Plus status[7] have additional benefits, such as booking stays thirteen months in advance, while Week Owners can only book twelve months in advance.  [Id. at ¶ 67.]  According to the Complaint, Plaintiffs argue that the lack of restrictions on the Points Owners ensures that they are automatically given the best units.  [Id. at ¶ 72.]

Plaintiffs allege that, from the inception of the Points-Based Program until April 2015, the only preferred status groups for Points Owners were Premier and Premier Plus, and Marriott limited the number of the total available points that could be owned by each group.  However, there are now five status groups – Owner, Select, Executive, Presidential, and Chairman's Club.[8]  Plaintiffs argue that all five groups have greater reservation rights than the Week Owners, and there are no longer any limitations on the number of Points Owners that can belong to

---

[7] From the commencement of the Points-Based Program until April 2015, Premier Plus status was given to Points Owners with 13,000 points or more, and Premier status was given to Points Owners with 6,500 to 12,999 points.  [Complaint at ¶ 68.] Marriot later expanded the categories of Points Owners.  See infra note 8.

[8] The current categories of Points Owners are: Owner (less than 4,000 points); Select (4,000-6,999 points); Executive (7,000-9,999 points); Presidential (10,000-14,999 points); and Chairman's Club (15,000 or more points).  [Complaint at ¶ 69.]

each status category.  [Id. at ¶¶ 68-69.]  Plaintiffs argue that Marriott has "unilateral control of the number of points required to establish such status."  [Id. at ¶ 73.]

According to Plaintiffs, before the creation of the Points-Based Program, their reservation rights were determined by their Home Resorts' Declarations, and they only competed for units with other Week Owners who owned weeks in similar units at the same Home Resort, during the same period.  Multi-Week Owners, such as Michael and Marla Flynn, were entitled to preferential reservation rights.  [Id. at ¶ 70.]  After the Points-Based Program began, the Week Owners – including the Multi-Week Owners – "began facing increased difficulty in reserving units at their designated times in light of the increasing number of Points Owners competing for reservations of the same categories of units and the advantageous reservation rights given to particularly elite Points Owners."  [Id. at ¶ 71.]  Plaintiffs argue, based on information and belief, that Marriott gives the timeshare interests owned by the MVC Trust an unfair reservation preference to ensure the success of the Points-Based Program.  Marriott allegedly does this by giving the MVC Trust greater reservation priority and by skimming the best units during the best time periods.  [Id. at ¶ 74.]

Plaintiffs argue that Marriott's practices have "substantially impaired the reservation rights of Plaintiffs

10

. . . by providing Points Owners with rights to reserve units in the Marriott Hawaii Timeshare Resorts that are better than the rights of Plaintiffs." [Id. at ¶ 73.]  Plaintiffs argue that their inability to reserve desirable units and time periods also impairs the trading value of their weeks when they decide either not to use their weeks during a particular year or if they decide they want to try to exchange their weeks at their Home Resorts for weeks at different Marriott Timeshare Resorts. [Id. at ¶ 84.]  Plaintiffs also argue that Marriott's practices violate the Declarations and other contract documents. [Id. at ¶¶ 75-77.]

**B.    Allegations Regarding the Sale of Points**

Plaintiffs allege that, since the creation of the Points-Based Program, Marriott has primarily promoted and marketed the program though sales centers at the Marriott Timeshare Resorts, including the Hawai`i Marriott Timeshare Resorts. [Id. at ¶ 79.]  The Week Owners are the primary target of this sales approach. [Id. at ¶ 81.]  Plaintiffs allege that, to induce the Week Owners to buy interests in the Points-Based Program, Marriott "specifically and falsely represents in sales presentations that [] beneficial interests in the MVC Trust constitute real estate," and it "deliberately and actively devalues the traditional week ownership interests and frustrates Weeks Owners' abilities to utilize their Use Weeks." [Id. at

11

¶ 82.]  According to Plaintiffs, Marriott does this by highlighting the advantages of the Points-Based Program compared to the Weeks-Based Program.  [Id. at ¶ 83.]

If a Week Owner is unwilling to exchange his interest for a points-based interest, Marriott's sales representatives tell him that the points-based interests, *inter alia*: "constitute real property, just as are their weekly timeshare interests; will restore and enhance the trading power and competitive value of their devalued weekly timeshare interests; will allow them to extend their stay; [and] will allow them to upgrade their units." [Id. at ¶ 85.]  Plaintiffs state that Marriott's sales representative at Newport Coast made these representations to Patrick and Mary Flynn when they purchased 1,500 points in 2014 "to buttress and protect the value of their weekly timeshare interest."  [Id. at ¶ 87.]  Plaintiffs argue that this is the only reason a Week Owner would buy that number of points, which has no independent value and is not real estate.  According to Plaintiffs, the maintenance fees that Patrick and Mary Flynn must pay in connection with their 1,500 points are exorbitant.  [Id. at ¶¶ 88-91.]

"By the end of 2013, almost 134,000 weeks-based owners had enrolled over 233,000 weeks in the points program, and of these owners who enrolled weeks with one of Marriott's sales executives, approximately 45 percent also purchased points."

12

[Id. at ¶ 86 & n.25 (citing Marriott Vacations Worldwide Corp., Annual Report (Form 10-K) (February 27, 2014)).]  Plaintiffs argue that Marriott is unjustly enriched by the maintenance fees the Points Owners pay because they reduce the amount of maintenance fees that Marriott must pay for all of the unsold timeshare units throughout the Marriott system which are held in the MVC Trust.  [Id. at ¶ 92.]

C.     **Claims and Relief**

Plaintiffs allege the following claims: breach of contract against MVC, MVC Exchange, MORI, MKORI, Kauai Lagoons, and Marriott Hospitality ("Count I"); breach of the implied covenant of good faith and fair dealing against MVC, MVC Exchange, MORI, MKORI, Kauai Lagoons, and Marriott Hospitality ("Count II"); a claim for violations of Hawai`i consumer protection statutes against all Defendants ("Count III"); a claim for violation of the Hawai`i timeshare statutes, Haw. Rev. Stat. § 514E-1, *et seq.*, against the Developer Defendants ("Count IV"); and unfair and deceptive acts and practices ("UDAP"), in violation of Haw. Rev. Stat. Chapters 480 and 514E, against the Developer Defendants ("Count V").

As to all counts, Plaintiffs pray for attorneys' fees, costs, and prejudgment interest.  [Id. at pg. 56, ¶ A.]  As to Counts I and II, Plaintiffs pray for: compensatory, general, and special damages; and any other appropriate relief, including an

13

injunction as to Count I to force Marriott to modify the reservation procedures.  [Id. at pg. 57, ¶¶ C-D.]  As to Count III, Plaintiffs pray for: actual, compensatory, treble, and punitive damages; an injunction requiring an independent, annual audit of the points and weeks timeshare inventories; an injunction requiring Marriott to create a mechanism which ensures that Plaintiffs and other Week Owners have priority in reserving units at their Home Resort as provided in the timeshare agreements; and any other appropriate relief.  [Id. at pgs. 57-58, ¶ E.]  As to Count IV, Plaintiffs pray for: actual and special damages; and any other appropriate relief.  [Id. at pg. 58, ¶ F.]  As to Count V, Plaintiffs pray for: statutory, actual, and special damages pursuant to Chapter 514E; actual, compensatory, treble and punitive damages, and injunctive relief pursuant to Chapter 480; and any other appropriate relief.  [Id. at ¶ G.]  In addition, Patrick and Mary Flynn pray for rescission of the points purchase contract.  [Id. at pg. 57, ¶ B.]

        In the instant Motion, Defendants argue that: Plaintiffs' claims under Haw. Rev. Stat. Chapters 480, 481A, and 514E are time-barred; Plaintiffs lack standing to bring Chapter 480 UDAP claims because they are not "consumers"; each count fails to state a claim upon which relief can be granted; and, to the extent that any of Plaintiffs' claims remain, the only proper defendant is MORI.

### DISCUSSION

I. **Defendants' Reply**

At the outset, this Court notes that Defendants did not timely file their reply.  Based on the February 16, 2016 hearing date, Defendants' reply was due by February 2, 2016.  See Local Rule LR7.4.  When Defendants filed their reply on February 5, 2016, it was three days late, and they did not obtain an extension of the deadline from this Court.

Although this Court has the discretion to disregard or strike Defendants' reply, see id. ("Any opposition or reply that is untimely filed may be disregarded by the court or stricken from the record."), it declines to do so because there is no indication that Plaintiffs were prejudiced as a result of the late filing of the reply.  However, this Court CAUTIONS Defendants that the filing of late memoranda or other documents in the future may result in sanctions, including, *inter alia*, striking the untimely filing.

This Court now turns to the merits of the Motion.

II. **Counts III and V - Plaintiffs' Statutory Claims**

   A. **Whether Plaintiffs' Statutory Claims are Time-Barred**

      1. **Which Limitations Period Applies**

Count III alleges that all Defendants violated Hawaii's consumer protection laws, in particular, Haw. Rev. Stat. § 480-1 through 480-24, and Haw. Rev. Stat. § 481A-3(5), (7), (9), (10),

and (12).  [Complaint at ¶ 138.]  Count V alleges a UDAP claim in

violation of Chapters 480 and 514E.  [Id. at pg. 55.]

Section 480-24(a) states:

> Any action to enforce a cause of action arising
> under this chapter shall be barred unless
> commenced within four years after the cause of
> action accrues, except as otherwise provided in
> subsection (b) and section 480-22.  For the
> purpose of this section, a cause of action for a
> continuing violation is deemed to accrue at any
> time during the period of the violation.

Plaintiffs argue that, because neither Chapter 481A nor

Chapter 514E has a specific statute of limitations, the six-year

catchall limitations period in Haw. Rev. Stat. § 657-1(4)

applies.[9]  [Mem. in Opp. at 8.]  This Court disagrees.

First, even though Count III is based on both

Chapter 480 and Chapter 481A, the entire claim is subject to the

four-year statute of limitations in § 480-24(a).  See, e.g.,

Martin v. GMAC Mortg. Corp., Civil No. 11-00118 LEK-BMK, 2011 WL

6002617, at *10 (D. Hawai`i Nov. 30, 2011) (concluding that a

claim alleging violations of Haw. Rev. Stat. § 480-2(a), Haw.

Rev. Stat. § 481A-3, and/or Haw. Rev. Stat. Chapter 454M was

barred by the statute of limitations in § 480-24(a)).

Second, although Count V is based on both Chapter 480

and Chapter 514E, an examination of the allegations in Count V

---

[9] Section 657-1(4) states: "The following actions shall be
commenced within six years next after the cause of action
accrued, and not after: . . . [p]ersonal actions of any nature
whatsoever not specifically covered by the laws of the State."

reveals that the nature of the claim is ultimately a Chapter 480 UDAP claim.  See Au v. Au, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981) ("The proper standard to determine the relevant limitations period is the nature of the claim or right, not the form of the pleading.  The nature of the right or claim is determined from the allegations contained in the pleadings." (citations omitted)).  The allegations in Count V are based upon the language in Haw. Rev. Stat. § 514E-11, titled "Prohibited practices," and § Haw. Rev. Stat. § 514E-11.1, titled "Deceptive trade practices."  Compare Complaint at ¶ 151 with Haw. Rev. Stat. § 514E-11(4), (6), and Haw. Rev. Stat. § 514E-11.1(8), (10), (11).

Section 514E-11 states: "Any violation of this section shall also constitute an unlawful or deceptive practice within the meaning of section 480-2," and the practices listed in § 514E-11.1 "constitute an unfair or deceptive practice, within the meaning of chapter 480."  Plaintiffs allege that, "[a]s a result of Defendants' **unfair and deceptive practices** described herein, the Plaintiffs . . . have suffered damages, including but not limited to loss of property and loss of money."  [Complaint at ¶ 152 (emphasis added).]  This Court therefore FINDS that the nature of the claim or right alleged in Count V is a Chapter 480 UDAP claim.

17

Thus, this Court CONCLUDES that the four-year limitations period in § 480-24(a) applies to all claims in Count III and Count V.

### 2.   When Did the Limitations Period Begin to Run

As to when the limitations period begins to run for a UDAP claim, this Court has stated that the period "starts to run upon the occurrence of the defendant's alleged violation." Lowther v. U.S. Bank N.A., 971 F. Supp. 2d 989, 1008 (D. Hawai`i 2013) (citations, internal quotation marks and brackets omitted). In Lowther, this Court rejected the plaintiff's argument that the limitations period did not start to run until his injury occurred.  Id.  Thus, this Court concluded that, "[i]n light of the four-year limitations period under Haw. Rev. Stat. § 480-24(a), [Lowther's UDAP claim] is time-barred unless the Complaint alleges sufficient facts to support a finding of a 'continuing violation,' or some reason that the statute of limitations may be tolled."  Id. at 1008-09.

In the instant case, Plaintiffs' Complaint does not include any allegations that would support either equitable tolling or tolling based on the circumstances described in § 480-24(b).  This Court also notes that Plaintiffs did not argue in response to the Motion that tolling applies.  Plaintiffs contend that the their statutory claims are timely under the continuing violation doctrine.  In Lowther, this Court stated:

In Au [v. Republic State Mortgage Co., Civil
No. 11-00251 JMS/KSC, 2013 WL 1339738, at *13 n.4
(D. Hawai`i Mar. 29, 2013)], with respect to the
"continuing violation" theory, this district court
cited Joseph v. J.J. Mac Intyre Cos., LLC, 281 F.
Supp. 2d 1156 (N.D. Cal. 2003). Au, 2013 WL
1339738, at *13 n.4. In Joseph, the court applied
the continuing violation doctrine to the
plaintiff's claim under the federal Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C.
§ 1692. The plaintiff's FDCPA claim alleged that,
in attempts to collect on the plaintiff's debt,
the defendant used an automated dialing system
with a pre-recorded voice to make repeated calls
to the defendant, some on [sic] which occurred
within the limitations period, and some of which
preceded it. Joseph, 281 F. Supp. 2d at 1158-59.
The court stated that "[t]he key is whether the
conduct complaint of constitutes a continuing
pattern and course of conduct as opposed to
unrelated discrete acts." Id. The court focused
on the pattern of the defendant's harassing
conduct, and found a continuing violation because
"claims of a pattern of debtor harassment
consisting of a series of calls cannot be said to
occur on any particular day." Id. at 1161
(internal quotations marks omitted) (quoting Nat'l
R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115,
122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002)).
In other words, "[i]t occurs over a series of days
or perhaps years and, in direct contrast to
discrete acts, a single act of harassment may not
be actionable on its own terms." Morgan, 536 U.S.
at 115, 122 S. Ct. at 2073. . . .

Id. at 1009 (some alterations in Lowther).

First, to the extent that Counts III and V assert

claims based upon allegedly improper practices that occurred in

connection with Patrick and Mary Flynn's purchase of their shares

in the Points-Based Program in 2014, Plaintiffs brought those

claims within the four-year limitations period. Those portions

of Counts III and V are timely, regardless of whether or not the

continuing violation doctrine applies.  To the extent that the Motion asks this Court to dismiss as untimely the portions of Counts III and V related to Patrick and Mary Flynn's interest in the Points-Based Program, the Motion is DENIED.

The remaining portions of Counts III and V arise from Plaintiffs' ability to use their floating interests in the Weeks-Based Program at the Hawai`i Marriott Timeshare Resorts.[10]  Based on the allegations in the Complaint, this Court FINDS that Plaintiffs' alleged injuries arise from the implementation of the Points-Based Program, which occurred in 2010.  [Complaint at ¶ 2.]  Plaintiffs have alleged a discrete act, the effect of which Plaintiffs continue to experience, not a continuing pattern and course of conduct.  This Court therefore CONCLUDES that: 1) the continuing violation doctrine does not apply; and 2) the portions of Counts III and V arising from Plaintiffs' ability to use their floating interests in the Weeks-Based Program are time-barred because Plaintiffs filed their Complaint more than four years after the implementation of the Points-Based Program.

---

[10] Where Plaintiffs purchased floating units, they are not "guaranteed use of any specific Unit in the Program," only "use of one (1) of the Units in the Program of the same Unit Type [they] selected."  [Motion, Decl. of Andrew S. Mack ("Mack Decl."), Exh. A (Maui Ocean Club Buyer's Acknowledgments (Lahaina Tower), dated 2/6/06 by Patrick and Mary Flynn) ("Buyer's Acknowledgments") at § 2(a).]  Based on the allegations in the Complaint, Plaintiffs' claims relate only to their floating timeshare interests, not to any fixed timeshare interests, *i.e.* where they purchased the right to use a specific unit during a specific week of the year.

Thus, those portions of Counts III and V fail to state a claim
upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).
This Court GRANTS the Motion, to the extent that those portions
of Counts III and V are DISMISSED.

 The Ninth Circuit has stated that: "As a general rule,
dismissal without leave to amend is improper unless it is clear
. . . that the complaint could not be saved by any amendment."
Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109,
1117-18 (9th Cir. 2013) (citation, internal quotation marks, and
brackets omitted).  This Court CONCLUDES that it is arguably
possible to cure by amendment the defects in the portions of
Counts III and V that accrued within the limitations period.
Plaintiffs may be able to amend their Complaint to identify other
discrete acts – which occurred within four years prior to the
filing of the Complaint – that allegedly caused Plaintiffs'
damages.  See, e.g., Complaint at ¶¶ 68-69 (discussing the
introduction of additional categories of Points Owners in April
2015).

 In addition, this Court must consider whether it would
be possible for Plaintiffs to cure the defects in the portions of
Counts III and V based on the implementation of the Points-Based
Program by adding allegations that would justify tolling the
statute of limitations.  As previously noted, there are currently
no allegations in the Complaint addressing tolling, and

Plaintiffs did not argue that hearing on the Motion that they could amend the Complaint to assert a basis for tolling. Based on the existing record, it is difficult for this Court to see how Plaintiffs could amend their Complaint to allege a basis for either equitable or statutory tolling. However, case law does not allow this Court to dismiss a claim with prejudice because there is a **low likelihood** that the plaintiff will be able to cure the defects by amendment. To justify dismissal with prejudice, this Court must conlude that the claim could not be saved by **any** amendment. Viewing the Complaint with a jaundiced eye, this Court cannot say that the portions of Counts III and V based on the implementation of the Points-Based Program could not be saved by any amendment. To the extent that this Court has dismissed these portions of Counts III and V as time-barred, it is arguably possible for Plaintiffs to cure those defects by amendment.

   B.   **Plaintiffs' Standing to Pursue Their Statutory Claims**

      1.   **Weeks-Based Chapter 480 Violations**

      Defendants next argue that Plaintiffs do not have standing to pursue claims alleging Chapter 480 violations related to their interests in the Weeks-Based Program because Plaintiffs are not "consumers." Haw. Rev. Stat. § 480-13(b) states, in pertinent part:

> Any **consumer** who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:

22

>           (1)  May sue for damages sustained by the
>           consumer . . . ; and
>
>           (2)  May bring proceedings to enjoin the
>           unlawful practices . . . .

(Emphasis added.)  In addition, Haw. Rev. Stat. § 480-2(d)

states: "**No person other than a consumer**, the attorney general or

the director of the office of consumer protection may bring an

action based upon unfair or deceptive acts or practices declared

unlawful by this section."  (Emphasis added.)  Thus, a plaintiff

who is not a "consumer" lacks standing to bring a Chapter 480

UDAP claim.[11]  <u>See, e.g.</u>, <u>Liberty Mut. Ins. Co. v. Sumo-Nan LLC</u>,

Civil No. 14-00520 DKW-KSC, 2015 WL 4093337, at *9 (D. Hawai`i

July 6, 2015).

        For purposes of Chapter 480: "'Consumer' means a

natural person who, primarily for personal, family, or household

purposes, purchases, attempts to purchase, or is solicited to

purchase goods or services or who commits money, property, or

services in a personal investment."  Haw. Rev. Stat. § 480-1.

The Hawai`i Supreme Court has held that "real estate or

residences do not qualify as 'goods' under HRS § 480-1."  <u>Cieri</u>

<u>v. Leticia Query Realty, Inc.</u>, 80 Hawai`i 54, 66, 905 P.2d 29, 41

(1995).  The supreme court held that the plaintiffs did "not have

---

[11] In contrast, for example, to the extent that Count V
asserts a UDAP claim based upon practices declared unfair,
unlawful, or deceptive practices under Haw. Rev. Stat. §§ 514E-11
or 514E-11.1, the requirement that the plaintiff be a consumer
does not apply.

standing as 'consumers' to bring a claim alleging a violation of
HRS chapter 480 for the real estate transaction at issue in
[that] case as purchasers of 'goods.'" Id. However, it also
held that "real estate or residences qualify as 'personal
investments' pursuant to HRS § 480-1." Id. at 69, 905 P.2d at
44.

In the instant case, the Complaint alleges that:
"Plaintiffs . . . are 'consumers' as defined by section 480-1 of
the consumer protection statutes because they are natural persons
who, primarily for personal, family, or household purposes,
purchased services or committed money, property or services in a
personal investment (here, the timeshare program)." [Complaint
at ¶ 128.] For purposes of the instant Motion, this Court must
assume that all of the factual allegations in the Complaint are
true. However, this Court is "'not bound to accept as true a
legal conclusion couched as a factual allegation.'" Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007)). Plaintiffs have not pled any
facts to support their conclusion that they are consumers under
§ 480-1 because they purchased their timeshare interests for
personal investment. This Court therefore does not accept this
allegation as true for purposes of the instant Motion.

Defendants argue that Plaintiffs are not consumers with
respect to their purchases of their interests in the Weeks-Based

Program because Plaintiffs acknowledged that the purchase was for personal use.  Defendants point out that, in connection with their 2006 Maui Ocean purchase, Patrick and Mary Flynn acknowledged:

> **OWNERSHIP INTERESTS ARE FOR PERSONAL USE.** The Seller emphasizes that any purchase should be made for personal use and enjoyment, not as an investment.  You understand that the Seller does not promise that you will realize any economic benefit from your Ownership Interest(s) or the operation of the Program.  This includes, but is not limited to, benefits such as tax treatment or advantages; investment potential; income; savings; appreciation; or other kind of financial advantage.  You understand that the purchase of an Ownership Interest in the Program should be based solely upon its value; and that value is in the use of the Ownership Interest.

[Buyer's Acknowledgments at § 6.[12]]  Similarly, the Maui Ocean Disclosure Statement states: "Ownership Interests in the Program are being offered and sold as real estate and not as a security.

---

[12] The Motion states that Patrick and Mary Flynn signed an identical document in connection with their purchase of an interest in the Ko Olina Weeks-Based Program and that Michael and Marla Flynn signed an identical document in connection with each of their purchases of interests in the Maui Ocean and Ko Olina Weeks-Based Programs.  [Mem. in Supp. of Motion at 6 n.2.] However, this is merely argument by defense counsel; Defendants have not submitted any evidence to support these assertions.  The Court will not consider these statements because "[s]tatements and arguments of counsel are not evidence."  See Kowalski v. Anova Food, LLC, Civil No. 11-00795 HG-RLP, 2015 WL 1117993, at *2 (D. Hawai`i Feb. 12, 2015) (citing Barcamerica Intern. USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 593 n.4 (9th Cir. 2002); EOTT Energy Operating Ltd. Partnership v. Winterthur Swiss Ins. Co., 257 F.3d 992, 999 (9th Cir. 2001)).

Purchases should be made for personal use and enjoyment, not as an investment."  [Complaint, Exh. I at 22, § 20.A.]

First, this Court must determine whether it can consider the Buyer's Acknowledgments in ruling on the instant Motion.  As a general rule, this Court's scope of review in considering a motion to dismiss is limited to the allegations in the complaint.  See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  "[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  Id. (citations and internal quotation marks omitted).  Ordinarily, consideration of other materials requires the district court to convert a motion to dismiss into a motion for summary judgment.  Yamalov v. Bank of Am. Corp., CV. No. 10-00590 DAE-BMK, 2011 WL 1875901, at *7 n.7 (D. Hawai`i May 16, 2011) (citing Parrino v. FHP, Inc., 146 F.3d 699, 706 n.4 (9th Cir. 1998)).[13]

The Complaint refers to and attaches the purchase agreements that Michael and Marla Flynn and Patrick and Mary Flynn executed for their respective timeshare purchases. [Complaint at ¶¶ 18, 22, Exh. A (Michael and Marla Flynn's

---

[13] Parrino was superseded by statute on other grounds, as stated in Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 681-82 (9th Cir. 2006) (per curiam).

purchase agreements), Exh. B (Patrick and Mary Flynn's purchase agreements).[14]  The Complaint also refers to and attaches the "Timeshare Agreements" for each of the Hawai`i Marriott Timeshare Resorts.  [Id. at ¶ 41, Exhs. C-G.]  What Plaintiffs refer to as the "Timeshare Agreements" are the Declarations.  See supra note 4 (listing the Declarations).  Plaintiffs refer to the purchase agreements and the applicable Declarations and Disclosure Statements as their "Contract Documents."  [Complaint at ¶ 46.]  The Complaint relies on the Contract Documents as setting forth the terms that Plaintiffs agreed to when they purchased their respective timeshare interests.

In the Motion, Defendants argue that the "Contract Documents" also include the Buyer's Acknowledgments, and that this Court can consider that document even though it is not contained in the Complaint.  This Court agrees.  In the Buyer's Acknowledgment, Patrick and Mary Flynn acknowledged receiving, inter alia, the Maui Ocean Disclosure Statement, the Maui Ocean Declaration, and the Maui Ocean Purchase Agreement.  [Buyer's Acknowledgment at 1.]  Further, the Maui Ocean Purchase Agreement states:

---

[14] Pages 2-7 (in the district court's electronic filing system) of Exhibit B are the Purchase Agreement that Patrick and Mary Flynn executed on February 6, 2006 for their Maui Ocean timeshare interest ("Maui Ocean Purchase Agreement").  They executed the Buyer's Acknowledgments in connection with that purchase.

> **21.   WHAT ARE THE DOCUMENTS; CHANGES MUST BE IN WRITING AND SIGNED; THESE DOCUMENTS CONTAIN THE ENTIRE AGREEMENT; PARTS OF THESE DOCUMENTS WILL STAY IN EFFECT AFTER CLOSING.** The "Contract Documents" consist of: (a) this Purchase Agreement; (b) your Buyer's Acknowledgments; (c) the Escrow Agreement . . . ; and (d) any changes to these documents. . . .  The entire agreement between you and the Seller will be contained in the Contract Documents. . . .
>
> **22.   YOUR BUYER'S ACKNOWLEDGMENTS.** Your Buyer's Acknowledgments is part of the Contract Documents, as stated in Paragraph 21.  It refers to other important documents and to matters which describe and explain the rights, limits and duties of everyone who owns an Ownership Interest. . . .

[Complaint, Exh. B at 7 (emphases in original).]

While Plaintiffs challenge Defendants' interpretation of particular statements in the Buyer's Acknowledgments, they have not raised any challenge to the authenticity of the copy of that document which Defendants attached to the Motion.  See Mem. in Opp. at 22.  This Court therefore FINDS that: 1) insofar as the Complaint refers to the "Contract Documents," and, insofar as the Buyer's Acknowledgments is one of the Contract Documents for Patrick and Mary Flynn's 2006 Maui Ocean purchase, the Complaint refers to the Buyer's Acknowledgment; 2) the Contract Documents – including the Buyer's Acknowledgments – are central to Plaintiffs' claims related to the Maui Ocean purchase; and 3) no party questions the authenticity of the copy of the Buyer's Acknowledgments that Defendants filed with the Motion.  This Court therefore CONCLUDES that it can consider the Buyer's

28

Acknowledgment for Patrick and Mary Flynn's 2006 Maui Ocean purchase without converting the Motion into a motion for summary judgment.

Plaintiffs argue that paragraph 6 of the Buyer's Acknowledgment is not evidence that Patrick and Mary Flynn agreed that the purchase was not for investment.  According to Plaintiffs, it merely required Patrick and Mary Flynn "to acknowledge what Defendants, as sellers, 'emphasize' should have been Plaintiffs' reason for the purchase," and, if Defendants had wanted to force them to contractually acknowledge or specifically agree that the purchase was not for investment, Defendants could have included such language in the Buyer's Acknowledgment.  [Mem. in Opp. at 22.]  Plaintiffs state that Michael and Marla Flynn purchased their timeshare interests "for personal use and enjoyment **and also as an investment**."  [Id. at 23.]  This Court does not consider this statement dispositive because, as noted supra note 12, it is not evidence because it is merely a statement by Plaintiffs' counsel without supporting documentation.  This Court, however, does note that the Hawai`i Supreme Court has recognized that real estate may be purchased with the intent that it be **both** for personal use and for investment.  Cieri, 80 Hawai`i at 68, 905 P.2d at 42 ("We further believe that . . . real estate may be purchased with an intent to reside on the parcel of property and, concurrently, with an

29

intent to hold the property in anticipation of an appreciation in the parcel's resale value.").

As to the Maui Ocean Disclosure Statement, Plaintiffs argue that it is not evidence that Patrick and Mary Flynn acknowledged or agreed that the purchase was not for investment. [Mem. in Opp. at 22.]  Further, Plaintiffs argue that "the very fact that the contract documents (drafted by the Defendants) also discuss rental of timeshare units by owners . . . undermines Defendants' position that timeshare purchasers do not also have an investment motive."  [Id. at 23 (some citations omitted) (citing Buyer's Acknowledgments at § 7(a)).]

This Court's determination of whether Patrick and Mary Flynn made their 2006 Maui Ocean purchase as "consumers" – as the term is defined in § 480-1 – will depend upon an interpretation of the Contract Documents and an examination of other evidence, such as declarations by Patrick and/or Mary Flynn.  This Court therefore CONCLUDES that it arguably possible for Plaintiffs to amend the Complaint to allege that Patrick and Mary Flynn made the 2006 Maui Ocean purchase – at least in part – as a personal investment.  Thus, it is arguably possible for them to amend their Complaint to allege that they have standing to bring claims alleging Chapter 480 violations related to that timeshare interest as "consumers."

Similarly, as to Michael and Marla Flynn's purchases and Patrick and Mary Flynn's other purchases in the Weeks-Based Program for Hawai`i Marriott Timeshare Resorts, this Court FINDS that there are insufficient allegations in the Complaint to plead a basis for standing to bring claims alleging Chapter 480 violations as "consumers."   However, this Court CONCLUDES that it is possible for Plaintiffs to amend the Complaint to cure this defect.   This Court DENIES the Motion to the extent that it asks this Court to dismiss with prejudice for lack of standing Plaintiffs' claims alleging Chapter 480 violations based on their purchase of interests in the Weeks-Based Program at the Hawai`i Marriott Timeshare Resorts.

## 2.   **Points-Based Chapter 480 Violations**

Similarly, there are insufficient allegations in the Complaint to plead a basis for standing bring claims alleging Chapter 480 violations based on Patrick and Mary Flynn's interest in the Points-Based Program.   This Court acknowledges that Plaintiffs contend that the BIs sold in the Points-Based Program are not real estate, but, even assuming, *arguendo*, that this Court accepted their position, Plaintiffs have not established that Patrick and Mary Flynn's interest in the Points-Based Program is either goods or services.   To the extent that Plaintiffs allege that Patrick and Mary Flynn are consumers because they purchased their interest in the Points-Based Program

31

for personal investment, there are insufficient factual allegations in the Complaint to support their position.

This Court therefore DISMISSES, for failure to state a claim, Patrick and Mary Flynn's claims alleging Chapter 480 violations based on their interest in the Points-Based Program. However, this Court CONCLUDES that it is possible for Plaintiffs to amend the Complaint to allege a factual basis for their position that Patrick and Mary Flynn are consumers with regard to the purchase of their interest in the Points-Based Program.  This Court DENIES the Motion to the extent that it asks this Court to dismiss with prejudice for lack of standing Plaintiffs' claims alleging Chapter 480 violations based on Patrick and Mary Flynn's purchase of their interest in the Points-Based Program.

### 3.   Chapter 514E Violations

As previously noted, Count V includes § 480-2 claims based on prohibited practices under § 514E-11 and deceptive trade practices under § 514E-11.1.  Haw. Rev. Stat. § 514E-30 states:

> This chapter applies to the offer and sale in Hawaii of time share interests in time share units located in Hawaii. . . .  As to the **offer and sale outside of Hawaii** of time share interest in a time share plan which includes time share units located in Hawaii, **this chapter, except for sections** 514E-2.5, 514E-8, 514E-9, 514E-10(b), **514E-11, and 514E-11.1 shall apply**.

(Emphases added.)

32

Patrick and Mary Flynn are Arizona citizens who purchased their interest in the Points-Based Program while they were staying at Newport Coast in California.  [Complaint at ¶¶ 22, 24.]  Thus, pursuant to § 514E-30, because the offer and sale of their interest occurred outside of Hawai`i, §§ 514E-11 and 514E-11.1 do not apply to the offer and sale of that timeshare interest.  This Court therefore CONCLUDES that Patrick and Mary Flynn do not have standing to pursue the claims in Count V based upon prohibited practices under § 514E-11 and deceptive trade practices under § 514E-11.1 related to their interest in the Points-Based Program.  Further, this Court CONCLUDES that it is not possible to amend the Complaint to cure this defect.  This Court GRANTS the Motion to the extent that the portion of Count V alleging §§ 514E-11 and 514E-11.1 violations related to Patrick and Mary Flynn's interest in the Points-Based Program is DISMISSED WITH PREJUDICE for lack of standing.

As to Patrick and Mary Flynn's and Michael and Marla Flynn's interests in the Weeks-Based Program, this Court notes that the Complaint alleges when and from whom they purchased their respective interests in the Weeks-Based Program, [Complaint at ¶¶ 19-20, 23,] but it does not allege where Plaintiffs purchased these interests.  This Court cannot determine if the offer and sale of these interests occurred in Hawai`i.  As with Patrick and Mary Flynn's purchase of their

33

interest in the Points-Based Program, Plaintiffs would not have
standing to pursue the portion of Count V alleging §§ 514E-11 and
514E-11.1 violations related to any offer and/or sale of an
interest in the Weeks-Based Program that occurred outside of
Hawai`i.  This Court CONCLUDES that it is arguably possible for
Plaintiffs to cure this defect in Count V by amendment.  This
Court DENIES the Motion to the extent that it asks this Court to
dismiss with prejudice for lack of standing the portion of
Count V alleging §§ 514E-11 and 514E-11.1 violations related to
Plaintiffs' respective interests in the Weeks-Based Program.

### 4.   Chapter 481A Violations

Count III alleges violations of both Chapter 480 and
Chapter 481.  Haw. Rev. Stat. § 481A-3 sets forth twelve
categories of practices that constitute deceptive practices when
they occur "in the course of the person's business, vocation, or
occupation."  Haw. Rev. Stat. § 481A-4(a) states, in pertinent
part: "A person likely to be damaged by a deceptive trade
practice of another may be granted an injunction against it under
the principles of equity and on terms that the court considers
reasonable."  For purposes of Chapter 481A, "'[p]erson' means an
individual, corporation, government, or governmental subdivision
or agency, business trust, estate, trust, partnership,
unincorporated association, two or more of any of the foregoing
having a joint or common interest, or any other legal or

34

commercial entity."   Thus, Plaintiffs are persons who have standing to bring Chapter 481A claims, and Defendants are all persons who are subject to suit for Chapter 481A claims.   This Court DENIES the Motion to the extent that it asks this Court to dismiss with prejudice for lack of standing the portion of Count III alleging Chapter 481A violations.

###    C.    **Whether the Statutory Claims are Sufficiently Pled**

Defendants next argue that, even if Plaintiffs' claims in Counts III and V are not time-barred, and even if Plaintiffs have standing to pursue those claims, the claims are not sufficiently pled.   See Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955)).

The only portions of Counts III and V that are timely are Patrick and Mary Flynn's claims related to their interest in the Points-Based Program.   This Court dismissed their Count V claims alleging §§ 514E-11 and 514E-11.1 violations with prejudice in light of § 541A-30, and dismissed their claims alleging Chapter 480 violations without prejudice because the Complaint does not allege a factual basis for Plaintiffs' position that Patrick and Mary Flynn are "consumers" as to the purchase and use of their interest in the Points-Based Program.

35

The only portion of Counts III and V that remain related to Patrick and Mary Flynn's interest in the Points-Based Program is the portion of Count III alleging Chapter 481A violations.  This Court cannot determine from the Complaint what is the basis of Plaintiffs' claim alleging violations of Chapter 481A related to Patrick and Mary Flynn's interest in the Points-Based Program. Thus, the remaining portion of Count III fails to state a claim, but this Court CONCLUDES that it is possible for Plaintiffs to cure that defect by amendment.  The portion of Count III alleging Chapter 481A violations related to Patrick and Mary Flynn's interest in the Points-Based Program is therefore DISMISSED WITHOUT PREJUDICE.

Insofar as this Court has dismissed all portions of Counts III and V, this Court declines to address whether claims in Counts III and V which this Court has not already addressed are sufficiently pled.  Even if this Court were to conclude that any portion of Count III or Count V was not sufficiently pled, this Court would give Plaintiffs the opportunity to cure the defects by amendment.

In order to provide guidance to Plaintiffs in amending Counts III and V, this Court notes that those counts are based – at least in part – on allegations that Marriott made various intentional misrepresentations to Plaintiffs.  Those portions of Counts III and V sound in fraud and must comply with the

following heightened pleading standard:

> [Fed. R. Civ. P.] 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Pursuant to Rule 9(b), a party is required to make particularized allegations of the circumstances constituting fraud.  See Sanford v. MemberWorks, Inc., 625 F.3d 550, 557-58 (9th Cir. 2010).

> In their pleadings, Plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice."  See Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see also Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007) (en banc) ("[T]he state of mind — or scienter — of the defendants may be alleged generally." (citation omitted)); Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

> When there are multiple defendants,

>> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.

> Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (alterations in Swartz) (internal quotation marks and citations omitted); see also Meridian Project Sys., Inc. v. Hardin Constr. Co., 404 F.

> Supp. 2d 1214, 1226 (E.D. Cal. 2005) ("When fraud
> claims involve multiple defendants, the complaint
> must satisfy Rule 9(b) particularity requirements
> for each defendant." (citations omitted)).

Barker v. Gottlieb, 23 F. Supp. 3d 1152, 1164-65 (D. Hawai`i

2014) (alterations in Barker) (some citations omitted).  Further,

> the false representation forming the basis of  a
> fraud claim "must relate to a past or existing
> material fact and not the occurrence of a future
> event."  Joy A. McElroy, M.D., Inc. v. Maryl
> Group, Inc., 107 Hawai`i 423, 433, 114 P.3d 929,
> 939 (Ct. App. 2005) (citations and block quote
> format omitted) (emphasis in original).  Further,
> even if the allegations satisfy the other elements
> of a fraud claim, "[f]raud cannot be predicated on
> statements which are promissory in their nature,
> or constitute expressions of intention, and an
> actionable representation cannot consist of mere
> broken promises, unfulfilled predictions or
> expectations, or erroneous conjectures as to
> future events[.]"  Id. (citations and block quote
> format omitted) (emphasis in original).  The
> exception to this general rule is that "[a]
> promise relating to future action or conduct will
> be actionable, however, if the promise was made
> without the present intent to fulfill the
> promise."  Id. (citations and block quote format
> omitted) (emphasis in McElroy).

Molina v. OneWest Bank, FSH, 903 F. Supp. 2d 1008, 1020 (D.

Hawai`i 2012) (alterations in Molina) (some citations omitted).

This Court emphasizes that it makes no findings or conclusions

regarding whether the allegations in the Complaint are sufficient

to comply with these standards.

     **D.**    **Summary of Plaintiffs' Statutory Claims**

     Thus, the Motion is GRANTED IN PART AND DENIED IN PART

as to Counts III and V.  This Court DISMISSES WITHOUT PREJUDICE

as untimely all portions of Counts III and V, except for the
portions related to Patrick and Mary Flynn's interest in the
Points-Based Program.

As to the claims related to Patrick and Mary Flynn's
interest in the Points-Based Program: the portion of Count V
alleging §§ 514E-11 and 514E-11.1 violations is DISMISSED WITH
PREJUDICE for lack of standing; the portions of Counts III and V
alleging Chapter 480 violations are DISMISSED WITHOUT PREJUDICE
for failure to state a claim upon which relief can be granted;
and the portion of Count III alleging Chapter 481A violations is
DISMISSED WITHOUT PREJUDICE for failure to state a claim.

## III. **<u>Count IV - Chapter 514E Claim</u>**

In addition to the Chapter 514E claims alleged in
Count V, Plaintiffs allege a violation of Chapter 514E's One-to-
One Rule.  Hawaii's One-to-One Rule states:

> (a)  A developer shall not offer or dispose of a
> time share unit or a time share interest unless
> the one-to-one use-right to use-night requirement
> is currently satisfied and will continue to be
> satisfied for the duration of the time share plan.
>
> (b)  The time share instruments shall contain
> provisions assuring satisfaction of the one-to-one
> use-right to use-night requirement for the
> duration of the time share plan except during
> temporary periods of noncompliance due to casualty
> or condemnation.
>
> (c)  The following criteria shall be considered in
> determining whether the one-to-one use-right to
> use-night requirement is satisfied:

(1)   If the time share plan has more than one class of time share interest, then the requirement must be satisfied within each class;

(2)   Only use nights available and protected from blanket liens for the duration of the time share plan shall be counted; provided that if time share interests are classified by duration, then as to each class, only use nights available and protected from blanket liens for the entire duration of that class shall be counted;

(3)   A use night counted to satisfy the requirement for one class may not also be counted to satisfy the requirement for a competing class;

(4)   No individual time share unit may be counted as providing more than three hundred sixty-five use nights per calendar year (or more than three hundred sixty-six use nights per leap year);

(5)   The use rights of each owner shall be counted without regard to whether the owner's use rights have been suspended for failure to pay assessments or otherwise.  Use rights attributable to unsold time share interests shall be counted;

(6)   Use rights of nonowners shall be counted.  Use rights of the developer and its affiliates in excess of those attributable to unsold time share interests shall be counted;

(7)   Use nights reserved by the association or plan manager for the purpose of performing maintenance and repairs to a time share unit shall not be considered;

(8)   Use rights borrowed from a subsequent year or carried over from a prior year shall not be considered; provided that such practice is not established for the purpose of evading the requirements of this section; and provided further that any such

40

> > acceleration or deferral of use rights is
> > appropriately balanced and restricted; and
> >
> > (9)  The director may adopt rules identifying
> > additional criteria to be used to calculate
> > whether the one-to-one use-right to use-night
> > requirement is satisfied.
> >
> > (d)  This section shall not be deemed to prohibit
> > the time share instruments from including
> > provisions permitting rental by the association or
> > the developer, or reservation and use by owners,
> > of use nights which remain unreserved as of sixty
> > or fewer days in advance of the use night.  Any
> > such use rights shall not be considered in
> > determining whether the one-to-one use-right to
> > use-night requirement is satisfied.

Haw. Rev. Stat. § 514E-8.6.[15]  The "'[o]ne-to-one use-right to

use-night requirement' means that the sum of the nights which

owners are entitled to use in a given year shall not exceed the

number of nights available for use by those owners during that

year."  Haw. Rev. Stat. § 514E-1.  The Hawai`i State Legislature

enacted the One-to-One Rule "'to prohibit overselling, or selling

the right to use more weeks or nights than are available in a

time share plan, and to assure the right and practical ability of

each owner to use a time share unit for the maximum number of

nights to which the owner is entitled.'"  <u>Roaring Lion, LLC v.

Exclusive Resorts PBL 1, LLC</u>, No. CAAP-11-0001072, 2013 WL

---

[15] The Court notes that, because § 514E-8.6 is not one of
the sections listed in § 514E-30, the One-to-One Rule applies
even if Plaintiffs purchased their interests in the Hawai`i
Marriott Timeshare Resorts outside of Hawai`i.

1759002, at *9 (Hawai`i Ct. App. Apr. 24, 2013) (quoting Sen.

Comm. Rep. No. 582, in 1997 Senate Journal, at 1127).

Plaintiffs allege that Marriott has violated the One-

to-One Rule through the following:

143. The Defendants failed to fulfil their
obligation and violated the statute by
implementation and operation of the new timeshare
model because, with the exponentially increasing
number of Points Owners, the sum of nights which
owners are entitled to use in a given year, on
information and belief, has exceeded the number of
nights available for use by those owners during
that year.

144. In other words, the Defendants have
violated the one-to-one use-right to use-night
requirement by, on information and belief, failing
to assure the right and practical ability of each
owner to use a timeshare unit for the maximum
number of nights to which the owner is entitled.

145. [Plaintiffs] have experienced **increased
difficulty or inability to reserve their Use
Weeks**. On information and belief, this is a
result of (1) Marriott skimming from the inventory
to which Plaintiffs . . . are entitled and (2) the
infinite and exponentially growing number of
Points Owners competing with [Plaintiffs] for the
same finite number of premier units and use
periods.

146. As alleged above, Plaintiffs bargained
for (and Marriot agreed to) the right to compete
fairly with other Weeks Owners (and to compete for
the best use periods). **Initially, the Plaintiffs
enjoyed this right and were able to reserve
quality units, hassle-free. Since the points
program, [Plaintiffs'] use rights have been
impaired** by (on information and belief) Marriott's
unfair practice of scooping up a portion of the
quality inventory before [Plaintiffs] even have a
chance to compete. It is no longer an equitable
first-come, first-served reservation process but

42

> rather a system rigged to Marriott's and the MVC
> Trust's advantage.  This drastically limits the
> inventory available to [Plaintiffs]. . . .

[Complaint at pgs. 53-54 (emphases added).[16]]  Although

Plaintiffs allege that the number of nights that owners are

entitled to use in a year exceeds the number of nights that are

available to those owners, this is a legal conclusion which is

not entitled to the presumption of truth.  The only factual

allegations that Plaintiffs make in support of their position is

that their ability to make reservations during their designated

periods has been impaired, such that they only have access to

"poor quality units and less desirable use periods."  See, e.g.,

id. at ¶ 5.

There is virtually no case law regarding the

application of § 514E-8.6.  However, this Court finds the

reasoning in Abramson v. Marriott Ownership Resorts, Inc., CASE

NO. SACV 15-0135 AG(JCGx), 2016 WL 105889 (C.D. Cal. Jan. 4,

2016), to be persuasive.  The Abramsons challenged the same

Marriott Points-Based Program at issue in the instant case, and

the claims included the alleged violation of California's One-to-

---

[16] This Court assumes that the references to "Defendants" in
these paragraphs refer to the Developer Defendants, who are the
only named defendants in Count IV.  See Complaint at pg. 52.

43

One Rule, Cal. Bus. & Prof. Code § 11250.[17]   The Abramsons were

Week Owners at Newport Coast who converted their week-based

interest into points and purchased an additional 1,000 points.

Id. at *4.  In concluding that the Abramsons' allegations were

insufficient to state a claim for violation of the One-to-One

Rule, the district court stated:

> The Abramsons [sic] allegations are
> inadequate.  They merely allege that their right
> to reserve was "impaired."  They merely allege
> that they were "left to compete for poor quality
> units and less desirable use periods."  They
> merely allege that they "had to badger Marriott in

---

[17] Cal. Bus. & Prof. Code § 11250 states:

> A time-share plan may be created in any
> accommodation unless otherwise prohibited.  All
> time-share plans shall maintain a one-to-one
> purchaser to accommodation ratio, which means the
> ratio of the number of purchasers eligible to use
> the accommodations of a time-share plan on a given
> night to the number of accommodations available
> for use within the plan on that night, such that
> the total number of purchasers eligible to use the
> accommodations of the time-share plan during a
> given calendar year never exceeds the total number
> of accommodations available for use in the
> time-share plan during that year.  For purposes of
> the calculation under this section, each purchaser
> must be counted at least once, and no individual
> accommodation may be counted more than 365 times
> per calendar year or more than 366 times per leap
> year.  A purchaser who is delinquent in the
> payment of time-share plan assessments shall
> continue to be considered eligible to use the
> accommodations of the time-share plan for purposes
> of calculating the one-to-one purchaser to
> accommodation ratio.

Section 11250, like § 614E-8.6, "bars timeshare plans from
overselling timeshares."  Abramson, 2016 WL 105889, at *6

order to get the quality[] rooms they bargained
for."  They merely allege that they "had to accept
units that [we]re not the quality they requested."
In short, the Abramsons merely allege that their
ability to reserve was not ideal.  Defendants sum
up the problem succinctly.  "The One-to-One Rule
does not address the quality of units; it
prohibits selling more units than are
available. . . . [T]he [Second Amended Complaint]
. . . fails to identify a single instance where
[the Abramsons] tried to reserve a unit during
their designated times but were unable to do so."
"Not ideal" isn't enough to violate the One-to-One
Rule. . . .

Id. at *5 (some alterations in Abramson).

This Court agrees with the analysis in Abramson and
adopts that analysis in the instant case.  Plaintiffs' Complaint
does not allege any instance when they were unable to reserve any
room of the type they purchased during any week during their
designated period.  Plaintiffs, like the Abramsons, merely allege
that their use rights were not ideal, and this is not enough to
allege a plausible basis for their claim that the Developer
Defendants are violating the One-to-One Rule.  This Court,
however, CONCLUDES that it is possible for Plaintiffs to amend
the Complaint to cure this defect.  Count IV is therefore
DISMISSED WITHOUT PREJUDICE.

**IV.  <u>Count I - Breach of Contract</u>**

Count I alleges that Marriott has breached Plaintiffs'
Contract Documents by: 1) skimming the most desirable units and
dates for the Points Owners; 2) violating the One-to-One Rule;
3) transferring or mortgaging ownership interests to the MVC

45

Trust in a way that diminished the value of the Week Owners'
interests; [Complaint at ¶¶ 110-15;] 4) "deliberately and
actively undermining week ownership interests in advertising";
[id. at ¶ 116;] and 5) impairing Plaintiffs' "ownership and use
rights by utilizing an arbitrary points value system in
conjunction with the reservation preferences granted to Points
Owners to diminish the value of week ownership interests" [id.].

> A. **Violation of the One-to-One Rule**

First, insofar as this Court has already concluded that
Plaintiffs fail to state a plausible claim for violation of the
One-to-One Rule, that theory of liability for their breach of
contract claim also fails.  However, for the same reasons as with
Count IV, it is arguably possible for Plaintiffs to cure the
defects in this portion of the breach of contract claim by
amendment.

> B. **Skimming**

As to the skimming theory of liability, Plaintiffs
allege that Marriott's skimming practice violates the portions of
the parties' agreements promising that: 1) "Marriott has no
greater reservation or use rights than other Weeks Owners and
possesses no 'greater priority with respect to reservation than
any other Owner'"; 2) "reservation[s] will equitably be on a
'first-come, first-served' basis"; and 3) "Weeks Owners [will]
compete only with other Weeks Owners for the units in which they

46

have an interest."  [Complaint at ¶ 112.]  The factual

allegations Plaintiffs' offer in support of their skimming theory

are as follows:

> to insure the success of the points model and
> particularly the ability of Points Owners to
> reserve use period[s], **on information and belief**,
> Marriott gives itself an unfair reservation
> preference.  Although the governing documents
> provide that all Owners will compete for
> reservations on a "first-come, first-served
> basis," **on information and belief**, Marriott gives
> itself greater priority and automatically reserves
> for itself use periods and units ahead of other
> Weeks Owners – and **undoubtedly** it reserves the
> best of available options.  **To illustrate**, if the
> MVC Trust owns twenty 2-bedroom units in Ko Olina
> Club, the moment the reservation window opens up
> thirteen months in advance (for multiple Weeks
> Owners), Marriott – through Marriott Hospitality
> and MVC Exchange Co. (which operate the
> reservation systems) and programs in its computer
> reservation system – automatically reserves for
> itself twenty units with the best view, in the
> best location within the resort, and during the
> most in-demand weeks.  In short, **on information
> and belief**, Marriott skims from the *crème de la
> crème* of its inventory - leaving Weeks Owners,
> even multiple Weeks Owners, to compete for the
> chaff.

[Id. at ¶ 74 (emphases added).]

Plaintiffs' skimming theory is based upon allegations

made "on information and belief," assumptions, and hypothetical

illustrations.  This district court has stated, "although

allegations 'upon information and belief' may state a claim after

Iqbal and Twombly, a claim must still be based on factual content

that makes liability plausible, and not be 'formulaic recitations

of the elements of a cause of action.'" <u>Klohs v. Wells Fargo</u>
<u>Bank, N.A.</u>, 901 F. Supp. 2d 1253, 1260 n.2 (D. Hawai`i 2012)
(quoting <u>Long v. Yomes</u>, 2011 WL 4412847, at *4 (D. Haw. Sept. 20,
2011) (quoting <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. 1955)).
Plaintiffs' Complaint does not contain sufficient factual content
to make their skimming theory of liability plausible because
their allegations regarding this issue are purely speculative.
To the extent that it is based on their skimming theory,
Plaintiffs' breach of contract claim fails to state a claim upon
which relief can be granted, and must be dismissed.

> **C.**   **<u>Improper Transfer of Ownership Interests</u>**

As to the improper transfer theory of liability,
Plaintiffs argue that Marriott violated the provisions in the
Declarations stating that "no timeshare owner, including the
developer entities, can transfer or mortgage ownership interests
in a manner that 'otherwise affect another Owner's Ownership
Interest,' and an Owner can transfer only the Owner's respective
interests." [Complaint at ¶ 43.]  Plaintiffs argue that
"Marriott transferred its unsold interests to MVC Trust and thus
created an entirely new class of owners that competes with Weeks
Owners and which has led to the diminution in value of week
ownership interests.  Marriott did not specifically reserve any
right that permitted such transfer." [<u>Id.</u> at ¶ 115.]

Plaintiffs do not identify the specific provision in the Contract Documents that their improper transfer theory is based upon.  See Mem. in Opp. at 15-16 (citing Complaint at ¶¶ 43, 115).  According to Defendants, the quoted language in the Complaint comes from § 7.5 of the Declarations, which states:

7.5   LIMITATION ON TRANSFERS.

A.    AFFECT ON OTHERS.  The right to transfer and mortgage an Ownership Interest is limited to each Owner's respective interest in the Ownership Interest, and no Owner may transfer, mortgage or otherwise affect another Owner's Ownership Interest.

B.    LIMITATION ON TRANSFER RIGHTS.  The right to transfer and mortgage shall not apply to the Property, any Unit or the Common Furnishings. An Owner shall not transfer or mortgage the Property, any Unit or the Common Furnishings, or any part or interest therein, except such Owner's own Ownership Interest.

C.    ASSOCIATION FUNDS.  No Owner shall transfer, mortgage or otherwise adversely affect funds held by the Association or the Program Operator, except to the extent required by this Declaration.

D.    PROTECTION OF OTHER OWNERSHIP INTERESTS.  No Owner shall take any action or fail to take any action which will subject any other Owner's Ownership Interest, the Property, any Unit, or Association funds to any lien, attachment or other similar proceedings, which may result in sale or threatened sale of the Ownership Interest of any other Owner, any Unit, or any portion thereof, in which such Owner has an interest, except such Owner's Ownership Interest, or any other portion of the Property; or which would result in a sale or threatened sale or other action which would cause any interference in the use and enjoyment by any other Owner of such Owner's Ownership Interest.

49

[Complaint, Exh. C (Maui Ocean Declaration) at 21 (emphases omitted).]  An "Owner" includes, *inter alia*, a purchaser of an Ownership Interest and the "Developer" – MORI – "with respect to each Ownership Interest it owns and which is not subject to an agreement of sale."  [Id. at 4, § 1.2.F.]  The Ko Olina Declaration contains comparable provisions.  [Complaint, Exh. D at 4-5, § 1.1.F; id. at 28, § 7.5.]

Plaintiffs apparently argue that MORI's transfer of the unsold timeshare interests to the MVC Trust violated § 7.5.A because the transfer "affect[ed] another Owner's Ownership Interest."  Defendants argue that § 7.5.D defines the affects on another owner's ownership interests that are prohibited in § 7.5.A.  [Reply at 14.]  This Court disagrees with Defendants' interpretation because § 7.5.D does not state that it defines "affect another Owner's Ownership Interest."  Further, § 7.5.A prohibits **transfers, mortgages, or other actions** that affect other ownership interests, whereas § 7.5.D prohibits "**any action or fail[ure] to take any action**" that has the defined effects on other ownership interests.

However, even assuming, *arguendo*, that § 7.5.D does not apply to Plaintiffs' claim for the breach of § 7.5.A, Plaintiffs have not plead sufficient allegations that, if proven, would establish that the mere transfer of MORI's unsold timeshare interests to the MVC Trust affected Plaintiffs' ownership

interests in the Weeks-Based Program at Maui Ocean and Ko Olina. To the extent that it is based on their improper transfer theory, Plaintiffs' breach of contract claim fails to state a claim upon which relief can be granted, and must be dismissed.

      **D.**     **<u>Undermining Plaintiffs' Interests During Advertising</u>**

      Plaintiffs also argue that MVC and MORI breached Plaintiffs' Contract Documents by "deliberately and actively undermining week ownership interests in advertisements." [Complaint at ¶ 116.] Plaintiffs allege that the following are examples of such advertising:

> Marriott unceasingly and unabashedly touts the advantage of the points in comparison to the weeks product, representing that when owners elect Vacation Club Points (1) they are "no longer locked into 7-night stays," (2) they are "no longer locked into weekend check-ins," (3) "[y]ou choose where and when you want to go.  You aren't tied to a specific time of year," (4) "[y]ou aren't tied to the same place every year," and (5) "[o]wners in the Marriott Vacation Club Destinations[] program can choose from any location and any size villa, check in on any day they wish and stay as long as they want."

[<u>Id.</u> at ¶ 83 (some alterations in original).]

      This district court has recognized that: "To allege breach of contract, the complaint must, at a minimum, cite the contractual provision allegedly violated." <u>Valencia v. Carrington Mortg. Servs., LLC</u>, Civil No. 10-00558 LEK-RLP, 2013 WL 375643, at *7 (D. Hawai`i Jan. 29, 2013).  Plaintiffs have not alleged which specific provision in which of the Contract

Documents Marriott's advertising allegedly violated, nor have
Plaintiffs alleged how the advertising violated that provision.
To the extent that it is based upon the theory that Marriott
undermined Plaintiffs' ownership interests during the advertising
of the Points-Based Program, Plaintiffs' breach of contract claim
fails to state a claim upon which relief can be granted, and must
be dismissed.

### E.    Creation and Operation of the Points-Based Program

Plaintiffs' final theory of liability for their breach
of contract claim is that Marriott impairs Plaintiffs' "ownership
and use rights by utilizing an arbitrary points value system in
conjunction with the reservation preferences granted to Points
Owners to diminish the value of week ownership interests."
[Complaint at ¶ 116.]  Plaintiffs apparently argue that the
creation and operation of the Points-Based Program violate the
provisions in Plaintiffs' Contract Documents which promise that:
"Owners" can reserve stays "on a first-come, first-served basis,
with other Owners, beginning twelve months in advance of the
requested check-in day"; and "the Developer does not possess any
greater priority with respect to reservation than any other
Owner."  See *supra* notes 5-6 (quoting Disclosure Statements).
Plaintiffs state that "Owner" is defined in the Declarations.
[Complaint at pg. 20 n.17.]

The relevant sections of the Maui Ocean Declaration state:

E.   OWNERSHIP INTERESTS.   "Ownership Interests," which shall include the following interests or rights which are indivisible and inseparable:

1.   OWNERSHIP SHARE.  As to each Ownership Interest, an "Ownership Share" in one of the Units.  An "Every Year Ownership Share" has a one-fifty second (1/52) fractional undivided interest, as tenant in common, in a Unit.  An "Every Other Year Ownership Share" has a one-one hundred and fourth (1/104) fractional undivided interest, as tenant in common, in a Unit;

2.   RIGHT TO USE.  The right to reserve and then use for a period of approximately one (1) week, a Unit in the Program of the same type as the particular Unit in which a share is owned in accordance with Paragraph 3.7 hereof, every year (if an Owner owns an Every Year Ownership Share) or every other year (if an Owner owns an Every Other Year Ownership Share) on a fixed or floating time basis in accordance with Paragraph 3.7 D. hereof; and

3.   MEMBERSHIP.  Membership in the Association pursuant to Paragraph 4.1 hereof.

F.   OWNERS.  "Owners" of Ownership Interests, including:

1.   Each person who initially acquires an Ownership Interest from the Developer, and such Owner's heirs, devisees, successors, personal representatives and assigns;

2.   Each person who is a purchaser of an Ownership Interest under an agreement of sale, and such person's heirs, devisees, successors, personal representatives and assigns, only, however, to the extent and for the purposes described in Paragraph 7.2 B. below.  In all other respects, the seller under an agreement of sale shall be considered the Owner; and

53

> 3.   The Developer, with respect to each
> Ownership Interest it owns and which is not
> subject to an agreement of sale.

[<u>Id.</u>, Exh. C at 4, § 1.1 (emphases omitted).]  The Ko Olina

Declaration contains comparable provisions.  [<u>Id.</u>, Exh. D at 4,

§§ 1.1E-F.]  Thus, the Contract Documents define "Owners" as the

Week Owners – including Multi-Week Owners – and the Developer –

MORI.

After the implementation of the Points-Based Program,

the Week Owners still compete with other Week Owners who have

ownership interests in the same type of room during the same

period.  Plaintiffs' argument, however, is that Marriott breached

the Contract Documents by forcing them to also compete with a new

group – the Points Owners – to whom Marriott has given greater

rights than the Week Owners.  Plaintiffs' Complaint does not

identify which specific provision in which of the Contract

Documents Marriott allegedly violated when it created the new

group and gave the group more rights than the Weeks Owners.  To

the extent that the claim is based upon the creation and

operation of the Points-Based Program, Plaintiffs' breach of

contract claim fails to state a claim upon which relief can be

granted, and must be dismissed.

**F.   <u>Summary of Plaintiffs' Breach of Contract Claim</u>**

This Court has dismissed all of the theories of

liability in Plaintiffs' breach of contract claim.  However, this

Court CONCLUDES that it is arguably possible to cure the defects
in Count I by amendment to state either a plausible breach of
contract claim or a plausible claim for fraudulent
misrepresentation.  This Court therefore DISMISSES Count I
WITHOUT PREJUDICE.

**V.    Count III - Breach of the Covenant
       of Good Faith and Fair Dealing**

       Count II alleges that Marriott's actions breached the
covenant of good faith and fair dealing.  In the Motion,
Defendants argue that Count II fails to state a claim because
Hawai`i law does not recognize a claim for breach of the covenant
of good faith and fair dealing in this context.

       Hawai`i courts have recognized that "every contract
contains an implied covenant of good faith and fair dealing that
neither party will do anything that will deprive the other of the
benefits of the agreement."  Best Place, Inc. v. Penn Am. Ins.
Co., 82 Hawai`i 120, 123-24, 920 P.2d 334, 337-38 (1996)
(citations omitted).  "Good faith performance 'emphasizes
faithfulness to an agreed common purpose and consistency with the
justified expectations of the other party.'"  Hawaii Leasing v.
Klein, 5 Haw. App. 450, 456, 698 P.2d 309, 313 (1985) (quoting
Restatement (Second) of Contracts § 205 cmt. a (1981)).  This
district court, however, has observed that:

              Hawai`i courts have not recognized a separate tort
              cause of action for bad faith or breach of the
              duty of good faith and fair dealing based upon any

> type of contract in any circumstances.  Moreover,
> in <u>Francis v. Lee Enterprises, Inc.</u>, 89 Hawai`i
> 234, 971 P.2d 707, 711-12 (1999), the Hawai`i
> Supreme Court stressed the importance that claims
> of bad faith be limited to "the insurance context
> or situations involving special relationships
> characterized by elements of fiduciary
> responsibility, public interest, and adhesion."
> The Hawai`i Supreme Court stated that the
> limitation on the tort of bad faith was important
> due to the fact that recovery in tort was very
> different from contractual remedies.  <u>Id.</u> at
> 712-13.  Accordingly, the Hawai`i Supreme Court
> stated that Hawai`i law will not allow a recovery
> in tort "in the absence of conduct that
> (1) violates a duty that is independently
> recognized by principles of tort law and
> (2) transcends the breach of the contract."  <u>Id.</u>
> at 717.

<u>Sung v. Hamilton</u>, 710 F. Supp. 2d 1036, 1050 (D. Hawai`i 2010).

Plaintiffs argue that Count II is sufficiently pled because the Complaint includes allegations that "the Parties' relationship in this case is analogous to that of an innkeeper (e.g., a hotelier, proprietor, host, landlord) and her customer." [Mem. in Opp. at 17.]  The Hawai`i Supreme Court has adopted the analysis of the Arizona Supreme Court which indicates that an innkeeper-customer relationship is one of the special relationships that supports a claim for breach of the covenant of good faith and fair dealing.  In recognizing the claim in the insurance context, the Hawai`i Supreme Court stated:

> [t]ort actions for breach of covenants implied in
> certain types of contractual relationships are
> most often recognized where the type of contract
> involved is one in which the plaintiff seeks
> something more than commercial advantage or profit
> from the defendant.  When dealing with an

> innkeeper, a common carrier, a lawyer, a doctor or
> an insurer, the client/customer seeks service,
> security, peace of mind, protection or some other
> intangible.  These types of contracts create
> special, partly noncommercial relationships, and
> when the provider of the service fails to provide
> the very item which was the implicit objective of
> the making of the contract, then contract damages
> are seldom adequate, and the cases have generally
> permitted the plaintiff to maintain an action in
> tort as well as contract.

Best Place, 82 Hawai`i at 131-32, 920 P.2d at 345-46 (alteration

in Best Place) (quoting Rawlings v. Apodaca, 151 Ariz. 149, 159,

726 P.2d 565, 575 (1986) (citing W. Prosser & W. Keeton, Law of

Torts § 92 at 660-61 (5th ed. 1984))).

However, this Court cannot determine which portions of

the Complaint contain allegations that Plaintiffs' relationship

with the Defendants named in Count II is analogous to an

innkeeper-customer relationship.  Further, even assuming,

arguendo, that the Complaint does allege that Plaintiffs'

relationship with those Defendants is akin to an innkeeper-

customer relationship, Plaintiffs have not identified any case

law – from Hawai`i or elsewhere – which supports their position

that the relationship between a timeshare owner and the

developer, seller, or operator of the timeshare facility is akin

to the innkeeper-customer relationship.

This Court is not aware of any Hawai`i case law on this

issue, and therefore this Court must predict how the Hawai`i

Supreme Court would decide it.  See Trishan Air, Inc. v. Fed.

57

Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011).  In holding that

recognizing a claim for breach of the implied covenant of good

faith and fair dealing in the insurance context would not open

the floodgates to such claims for all contracts, the Hawai`i

Supreme Court stated: "The public interest in insurance

contracts, the nature of insurance contracts, and the inequity in

bargaining power between the insurer and the policyholder all

serve to distinguish insurance contracts from other types of

contracts."  Best Place, 82 Hawai`i at 131, 920 P.2d at 345

(citing and quotation marks omitted).  While it is true that,

like an insured, a purchaser/owner of a timeshare interest does

not participate in the drafting of the documents relating to the

timeshare, there is not the same inequity of bargaining power as

in the insurance context.  Someone who is considering purchasing

a timeshare interest at a hotel or resort can choose instead to

enter in the traditional innkeeper-customer relationship,

reserving his stays on an individual basis.  That relationship

would involve "a duty that is independently recognized by

principles of tort law" and could support a claim for the breach

of the covenant of good faith and fair dealing.  A purchaser of a

timeshare interest seeks a "commercial advantage" from the

seller, insofar as he purchases the timeshare interest because he

determines it is more advantageous than making reservations on an

individual basis.

This Court FINDS that the relationship between Plaintiffs and the Defendants named in Count II does not meet the criteria that the Hawai`i Supreme Court has set forth for relationships where a claim for breach of the covenant of good faith and fair dealing is available.  This Court therefore PREDICTS that the Hawai`i Supreme Court would not recognize a claim for breach of the covenant of good faith and fair dealing between a timeshare owner and the developer, seller, or operator of the timeshare facility.  Thus, this Court CONCLUDES that Count II fails as a matter of law, and it is not possible for Plaintiffs to cure the defects in this claim by amendment.  This Court GRANTS the Motion insofar as Count II is DISMISSED WITH PREJUDICE.

## VI. Proper Defendants

Finally, Defendants argue that MORI is the only proper defendant in this case because: Plaintiffs purchased their timeshare interests from MORI; MORI was the principal developer of the Marriott Timeshare Resorts; MORI owns and manages the Points-Based Program; and MORI owns, developed, and sells all of the MVC-branded products and programs.  Defendants argue that the majority of the other Defendants are only named because they are either the parent or a subsidiary of MORI, and the Complaint does not plead a sufficient basis for liability against those entities based on an alter ego theory.

This Court disagrees and finds that Plaintiffs' claims against the Defendants besides MORI are not based solely on the Defendants' corporate affiliation with MORI.  The Complaint contains allegations describing each Defendant's alleged role in the events which gave rise to Plaintiffs' claims.  However, as previously noted, this Court makes no findings or conclusions at this time regarding whether Plaintiffs' allegations against each Defendant are sufficient to satisfy the heightened pleading standard applicable to Plaintiffs' claims that sound in fraud.

To the extent that the Motion contends that MORI is the only proper defendant in this case, the Motion is DENIED WITHOUT PREJUDICE.  Defendants may revisit this issue to challenge the sufficiency of the allegations against each Defendant in the amended complaint.

## VII. <u>Summary and Leave to Amend</u>

This Court GRANTS the Motion insofar as this Court:

-CONCLUDES that the four-year limitations period in Haw. Rev. Stat. § 480-24(a) applies to all claims in Counts III and V;

-DISMISSES as untimely all portions of Counts III and V except for the portions related to Patrick and Mary Flynn's interest in the Points-Based Program;

-DISMISSES WITH PREJUDICE for lack of standing the portion of Count V alleging §§ 514E-11 and 514E-11.1 violations related to Patrick and Mary Flynn's interest in the Points-Based Program;

-DISMISSES for failure to state a claim upon which relief can be granted the portions of Counts III and V alleging Chapter 480 violations related to Patrick and Mary Flynn's interest in the Points-Based Program;

60

-DISMISSES for failure to state a claim the portion of Count III alleging Chapter 481A violations related to Patrick and Mary Flynn's interest in the Points-Based Program;

-DISMISSES Count IV for failure to plead sufficient allegations to establish a violation of the One-to-One Rule;

-DISMISSES all portions of Count I for failure to state a claim upon which relief can be granted; and

-DISMISSES WITH PREJUDICE Count II because Hawai`i law does not recognize a claim for breach of the covenant of good faith and fair dealing in this context.

This Court DENIES the Motion insofar as:

-the dismissal of Counts I, III, IV, and V are WITHOUT PREJUDICE because it is arguably possible for Plaintiffs to cure by amendment all of the defects in those claims that this Court has identified in this Order; and

-this Court REJECTS Defendants' argument that MORI is the only proper defendant in this case.

Plaintiffs may file a motion seeking leave to file an amended complaint with a proposed amended complaint setting forth the claims that this Court has dismissed without prejudice and in the format dictated by the Local Rules.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss the Complaint, filed December 24, 2015, is HEREBY GRANTED IN PART AND DENIED IN PART, as set forth *supra* Discussion Section VII.

//

//

//

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 29, 2016.



   /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MICHAEL KEVIN FLYNN, ET AL. VS. MARRIOTT OWNERSHIP RESORTS, INC., ET AL; CIVIL 15-00394 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**